907 P.2d 63

## In re DIAMOND BENEFITS LIFE INSURANCE COMPANY.

DIAMOND BENEFITS LIFE INSURANCE COMPANY, an Arizona corporation in Receivership, by and through Lawrence J. Warfield, Special Deputy Receiver for Diamond Benefits Life Insurance Company, Plaintiff,

v.

RESOLUTE HOLDINGS, INC., a Delaware corporation; Adventist Health System/West and Joint Health Ventures; Michael Bucci; Multicor, Inc.; Dooley Rucker Maris; Bence & Morales, P.C.; Gerald Armand; Charles Christopher;

Marshall Dooley; Sheldon Whitehouse; F. Spartin; William Spartin; Kathie Fallon; Peter Fallon; Sheila Durfee; Jane and Charles Christopher; Sandra Dooley; Jane and Arthur Karma; Burrillville Land Company; Carlsberg Management Company; Kathie and William Geary; RHI Holding; Six Corporation; Hilltop Developers; Sammy Reeder; Wayne Reeder; Chromalloy American; Canadian Universal; Atlantic Universal; Allied Holding Inc., Defendants.

No. CV–95–0105–CQ.

Supreme Court of Arizona,
En Banc.

Dec. 5, 1995.

Ayers & Brown, P.C. by Charles K. Ayers, Robert Bruce Washburn, Phoenix, and Guttilla & Murphy by Nicholas C. Guttilla, Eileen T. Baldwin, Phoenix, for Plaintiff.

White, Cummings & Longino by David L. White, Phoenix, and Arter & Hadden, by John R. Tate, Los Angeles, California, for Defendants.

## OPINION

MOELLER, Vice Chief Justice.

### FACTS AND PROCEDURAL HISTORY

The issue presented comes to us as a certified question of law from the United States District Court for the District of Arizona pursuant to the provisions of A.R.S. § 12–1861 and Rule 27, Rules of the Supreme Court.

Diamond Benefits Life Insurance Company (Diamond Benefits) is an Arizona insurance carrier. In December 1988, the State, through its Director of Insurance, commenced an action pursuant to A.R.S. §§ 20–612 and 20–615 requesting that Lawrence J. Warfield be appointed Special Deputy Director and Special Deputy Receiver of Diamond Benefits. The superior court granted the request.

In September 1989, Warfield sued several defendants for claims arising out of the sale of Diamond Benefits and subsequent disposition of assets. He filed the suit in federal court based on diversity jurisdiction. In June 1991, Warfield filed a motion to add Adventist Health Systems/West and Joint Health Ventures (the Adventist defendants) as defendants. He alleged that the Adventist defendants converted $3,859,041 of Diamond Benefits' funds which they received as payment for the sale of Diamond Benefits. The district court granted the motion.

The Adventist defendants filed a motion to dismiss in March 1993, arguing that the two-year statute of limitations of A.R.S. § 12–542 barred the conversion claim. The district court granted the motion, and Warfield moved for reconsideration or, in the alternative, that the question of the statute's applicability be certified to this court. The district court denied the motion for reconsideration, but found that good cause existed under A.R.S. § 12–1861 to certify the question to this court. We accepted the certified ques-

tion in June 1995, and in September 1995 denied reconsideration of the acceptance.

## QUESTION PRESENTED AND ANSWER

The question of state law which the district court has certified is whether "A.R.S. § 12–510, which exempts the state from being barred by the statutes of limitations prescribed in Title 12, Chapter 5 of the Arizona Revised Statutes, prevent[s] the dismissal of a conversion claim brought by the Plaintiff more than two (2) years after the date of the alleged conversion?" Our answer is yes.

## DISCUSSION

According to Arizona law, when an insurer is "impaired or insolvent," the Director of Insurance may apply to the superior court for an order directing rehabilitation or liquidation. *See* A.R.S. §§ 20–615 and –616. In delinquency proceedings, which include both liquidation and rehabilitation proceedings, the court appoints the Director of Insurance as receiver, and the director may appoint a special deputy director to act on the director's behalf. A.R.S. § 20–624. Under an order of rehabilitation, the director takes possession of the insurer's property and conducts the business, taking steps to remove the causes that have made rehabilitation necessary. A.R.S. § 20–620(A). An order to liquidate, as the name implies, orders the director to take possession of the insurer's property and liquidate the business, giving notice to all creditors so that they may present their claims. A.R.S. § 20–621(A). To the extent assets of the insurance company are unable to satisfy the claims of insureds, the Life and Disability Insurance Guaranty Fund of the Insurance Department pays insureds. A.R.S. §§ 20–681 to –695. The Fund is financed by an assessment on insurance companies and managed by the state. *Id.* In effect, therefore, the state is a real party in interest.

In this case, the deputy receiver (Warfield), in the course of the liquidation of Diamond Benefits, brought a conversion claim against the Adventist defendants, asserting that the claim is not subject to the statute of limitations defense. The state is exempt from the statute of limitations under the common law rule of *nullum tempus occurrit regi* ("time does not run against the king"), which is codified in A.R.S. § 12–510. *E.g. City of Bisbee v. Cochise County,* 52 Ariz. 1, 18, 78 P.2d 982, 989 (1938) (holding that the doctrine applied not only to the state but to all political subdivisions of the state).

The Adventist defendants argue that Warfield's conversion claim does not fall within the boundaries of the *regi* exception. They contend that Warfield, as special deputy receiver, acts on behalf of Diamond Benefits, not on behalf of the state. In agreeing with the defendants, the district court found the decision in *Trimble v. American Savings Life Ins. Co.,* 152 Ariz. 548, 733 P.2d 1131 (App.1986), to be inapposite. Although *Trimble* presents a different factual scenario than this case, we believe the principles *Trimble* expresses and the cases it discusses indicate that the present claim is not barred by the statute of limitations.

In *Trimble,* the trial court appointed the Director of Insurance receiver for an insurance company after concluding that the company was involved in securities and insurance fraud. 152 Ariz. at 551, 733 P.2d at 1134. The receiver developed a plan of reorganization which gave a rescission option to the policyholders/investors. *Id.* at 554, 733 P.2d at 1137. The trial court limited the rescission option to policyholders/investors who purchased after a certain date. *Id.* The court of appeals assumed the trial court imposed the time limitation because it found applicable the statute of limitations for fraud contained in A.R.S. § 44–2004(B). *Id.*

The court of appeals held that the trial court erred by limiting the rescission option to those who purchased after the specified date, because the statute of limitations did not apply to the plan formulated by the receiver. *Id.* at 555–56, 733 P.2d at 1138–39. The court of appeals found the appropriate inquiry to determine whether the receiver acted as the state was "the legislative intent of the insurance rehabilitation statutes." *Id.* at 555, 733 P.2d at 1138. It held that "[w]hen an insurer commits acts which are grounds for rehabilitation, such as violation

of the Arizona securities laws, the corrective measures taken by the state through the Director of Insurance benefit the public as a whole. The public interest is served by the cessation of illegal and fraudulent acts." *Id.* at 555–56, 733 P.2d at 1138–39. Though the plan tended to benefit individual policyholders/investors, it was still an effort by the state to protect the public, and thus not subject to a statute of limitations defense. *Id.*[1]

The *Trimble* court found *Herrmann v. Cissna*, 82 Wash.2d 1, 507 P.2d 144 (1973), "particularly instructive on the issue of whether the state herein is subject to the affirmative defense of the statute of limitations." 152 Ariz. at 555, 733 P.2d at 1138. We agree with this aspect of the holding in *Trimble*. In *Herrmann*, the state commissioner of insurance brought suit to recover damages caused by corporate mismanagement of an insurance company. The Supreme Court of Washington recognized that the action would benefit the insurance company and that the real beneficiaries would be the policyholders. It held:

> In performing the duties of his office, [the Insurance Commissioner] acts for and in the interest of the state and for its benefit. We have no hesitancy in saying that an action brought by the Insurance Commissioner, in his official capacity and exercising the authority conferred upon him by statute, is an action by the state.

*Herrmann*, 507 P.2d at 146.

The Adventist defendants contend that because the special deputy receiver is subrogated to the rights of Diamond Benefits, he is acting on behalf of a private interest and not on behalf of the state. We see no basis for distinguishing between the role of the receiver in *Herrmann* and the role of the special deputy receiver in this case. The director does not appoint the receiver as a favor to Diamond Benefits in order that the company might prosper. Instead, the director appoints the receiver pursuant to a legislative scheme designed to protect the public from the dangers of a non-complying insurance company. The state legislature created the department of insurance to "administer the state insurance laws" and to "protect the citizens of this state who purchase insurance." 1980 Ariz.Sess.Laws, Ch. 230, § 1. The primary purpose of delinquency proceedings is to ensure the payment of claims made against policies. *See United States Dept. of Treasury v. Fabe*, 508 U.S. 491, 505–506, 113 S.Ct. 2202, 2210, 124 L.Ed.2d 449 (1993) ("The primary purpose of a statute that distributes the insolvent insurer's assets to policyholders in preference to other creditors is identical to the primary purpose of the insurance company itself: the payment of claims made against policies."); A.R.S. § 20–629 (establishing the precedence of claims under insurance policies over the claims of general creditors). Delinquency proceedings also enable the receiver to repay the Arizona Insurance Guaranty Fund for payments made to policyholders of insolvent insurance companies.

The director as receiver, and any special deputy that she appoints, attempt to minimize the damage inflicted on the public and on shareholders or creditors due to the improper acts of the company. *See Herrmann*, 507 P.2d at 147 ("[O]bviously the commissioner is not authorized to take over the rehabilitation of insurance companies solely for the benefit of such companies, their shareholders, or policyholders. The legislature clearly had in mind, in enacting the insurance code, that such actions on the part of the commissioner would benefit the public generally.") Though this damage control may incidentally benefit investors, that is not the primary purpose of the delinquency proceedings. The receiver protects the public from the malfeasance of insureds and obtains reimbursement for the state's Insurance Guaranty Fund. The receiver does not act on her own or Diamond Benefits' behalf, but pursuant to a statutory scheme designed to safeguard the public interest.

---

1. The *Trimble* opinion does not refer to the statute we are asked to interpret in this case, A.R.S. § 12–510. *See* 152 Ariz. at 554–56, 733 P.2d at 1137–39. We refer to the common law origins of the *regi* exception only insofar as they shed light on the proper application of the statutory exemption.

While it is true that *Trimble* involved rehabilitation pursuant to A.R.S. § 20–620(A), and not liquidation pursuant to A.R.S. § 20–621(A), the Adventist defendants fail to justify application of the *regi* exception to one form of delinquency proceeding and not the other. Rehabilitation is undertaken by the director until the cause for rehabilitation is removed or it becomes clear to the director that further efforts toward rehabilitation would be futile. If rehabilitation is futile, liquidation is undertaken. The distinction between liquidation and rehabilitation depends not on whether or to what extent the state is involved, or how much benefit the public receives, but on whether the company can be salvaged. The economic viability of the delinquent insurance company should not serve as the touchstone for determining whether the statute of limitations is a valid defense.

Indeed, we conclude that the principle of *Trimble* applies here with even greater force than it did in that case. Here, the claims are being asserted on behalf of the insurer. In *Trimble,* the court gave the rescission option to persons who had claims against the insurer. If a receiver acts as the state in formulating a plan allowing defrauded investors the option of rescission (as in *Trimble* ), it stands to reason that a receiver (or deputy receiver) acts as the state in suing those who have allegedly defrauded an insurance company. In both cases, benefits run to individual investors or policyholders. However, in both cases, the benefits of the action also run to the citizenry of the state as a whole, who, the legislature has determined, would suffer at the hands of an unregulated insurance industry.

The principles of *Herrmann,* relied upon in *Trimble,* rest on a solid foundation. When the Director of Insurance institutes delinquency proceedings he does so pursuant to the dictates of the legislature. *See* A.R.S. §§ 20–611 to 20–648. The legislature sets forth the circumstances in which delinquency proceedings shall be undertaken and establishes the guidelines according to which the director institutes the proceedings. *See, e.g.,* A.R.S. §§ 20–620, –621. Of course, the director may, in his discretion, appoint special deputy receivers, such as Warfield, who may act in place of the director. A.R.S. § 20–624(F). However, both the receiver and deputy receiver control the insolvent or otherwise delinquent company with the goal of minimizing the damage inflicted by the act which necessitated the delinquency proceedings. A.R.S. § 20–724(E). They do not act on behalf of themselves or the insolvent company but, pursuant to legislative mandate, on behalf of the citizens of this state.

## DISPOSITION

We answer the certified question in the affirmative. A.R.S. § 12–510 does not bar the Special Deputy Director and Special Deputy Receiver's conversion claim.

FELDMAN, C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.