In the

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————

CITY OF PHOENIX, *Third-Party Plaintiff/Appellant*,

*v.*

GLENAYRE ELECTRONICS, INC.; WILLIAM LYON HOMES, INC.; KB
HOME HOLDINGS, INC.; RICHMOND AMERICAN HOMES, INC.;
MDC/WOOD, INC.; UDC HOMES, INC. nka SHEA HOMES OF
PHOENIX, INC. (FN) and  ELLIOTT HOMES, INC.; SWENGEL-ROBBINS
CONTRACTING CO., INC.; AZTEC CONSTRUCTION, INC.; JNC, INC.;
UH HOLDINGS, INC.; LOS PAISANOS DEVELOPMENT, INC.;
MICHAEL NEWSOME; CHI CONSTRUCTION CO.; CONTINENTAL
HOMES, INC.; PULTE HOME CORP.; DEL WEBB CORP.; WITTMAN
CONTRACTING CO.; JEFF BLANDFORD INVESTMENTS, INC.;
*Third-Party Defendants/Appellees*.

No. 1 CA-CV 14-0739
FILED 5-19-2016

———————————

Appeal from the Superior Court in Maricopa County
No. CV2013-001762
The Honorable Randall H. Warner, Judge
The Honorable Douglas L. Rayes, Retired Judge
The Honorable Lori Horn Bustamante, Judge

**AFFIRMED**

———————————

COUNSEL

Phoenix City Attorney's Office, Phoenix
By Brad Holm
*Counsel for Third-Party Plaintiff/Appellant*

Osborn Maledon PA, Phoenix
Mary R. O'Grady
*Counsel for Third-Party Plaintiff/Appellant*

Gallagher & Kennedy PA, Phoenix
By Kevin E. O'Malley, Mark A. Fuller, Thomas A. Maraz
*Counsel for Third-Party Defendants/Appellees CHI Construction Co.,
Continental Homes, Inc.*

Green & Baker Ltd, Scottsdale
By Katherine E. Baker, Diane L. Bornscheuer
*Counsel for Third-Party Defendant/Appellee Glenayre Electronics, Inc.*

Berkes Crane Robinson & Seal LLP, Los Angeles, CA
By Brad D. Bleichner
*Counsel for Third-Party Defendant/Appellee William Lyon Homes, Inc.*

Lorber Greenfield & Polito LLP, Phoenix
By Holly P. Davies, Alexix G. Terriquez
*Counsel for Third-Party Defendants/Appellees KB Home Holdings Inc.,
Richmond American Homes Inc., MDC/Wood, Inc.*

Wood Smith Henning & Berman LLP, Phoenix
By Jill Ann Herman
*Counsel for Third-Party Defendants/Appellees UDC Homes, Inc. nka Shea
Homes of Phoenix, Inc. (FN), Elliot Homes, Inc.*

Gammage & Burnham, PLC, Phoenix
By Richard K. Mahrle, Jason L. Cassidy
*Counsel for Third-Party Defendant/Appellee Swengel-Robbins Contracting Co.,
Inc.*

Law Offices of Joseph A. Kula, Scottsdale
By Joseph A. Kula, Benjamin R. Eid
*Counsel for Third-Party Defendant/Appellee Aztec Construction, Inc.*

Maynard Cronin Erickson Curran & Reiter PLC, Phoenix
By Daniel D. Maynard

*Counsel for Third-Party Defendants/Appellees JNC, Inc., UH Holdings, Inc.*

Quintairos Prieto Wood & Boyer, PA, Phoenix
By Vincent J. Montell, Michael J. Ponzo, Rita J. Bustos
*Counsel for Third-Party Defendant/Appellee Los Paisanos Development, Inc.*

Michael Newsome, Cave Creek
*Third-Party Defendant/Appellee*

Dickinson Wright PLLC, Phoenix
By Michael S. Rubin, Stephen E. Richman, J. Gregory Cahill
*Counsel for Third-Party Defendants/Appellees Pulte Home Corp., Del Webb Corp.*

Shorall McGoldrick Brinkmann PC, Phoenix
By Thomas J. Shorall, Jr., Jason J. Boblick
*Counsel for Third-Party Defendant/Appellee Wittman Contracting Co.*

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik, Mia Nguyen
*Counsel for Third-Party Defendant/Appellee Jeff Blandford Investments, Inc.*

---

**OPINION**

Judge Kenton D. Jones delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia A. Orozco joined.

---

**J O N E S**, Judge:

¶1         The City appeals the trial court's orders: (1) dismissing its third-party complaint against Appellees because it was not brought within the eight-year period of repose set forth in Arizona Revised Statutes (A.R.S.) section 12-552(A),[1] and (2) awarding certain Appellees their attorneys' fees as the successful parties in a contract action pursuant to A.R.S. § 12-341.01(A).  We conclude A.R.S. § 12-552 applies to governmental entities and that the City's claims are based in contract within the meaning of A.R.S. § 12-552(F); therefore, the City's claims against Appellees are time-barred.  We also find no error in the court's grant of attorneys' fees to those

---

[1]         Absent material revisions from the relevant date, we cite a statute's current version.

Appellees who properly asserted a right to fees and conclude that the amounts awarded were within the court's discretion. For these reasons, we affirm.

## FACTS[2] AND PROCEDURAL HISTORY

**¶2**        In 2013, Carlos Tarazon filed a lawsuit alleging he had developed mesothelioma as a result of long-term exposure to asbestos while performing pipe installation and repair for the City and numerous other defendants not parties to this appeal. Tarazon further alleged the City knew of the inherent dangers of asbestos exposure and was negligent in failing to adequately warn and protect him from those risks.[3]

**¶3**        The City immediately filed a third-party complaint seeking defense and indemnification from eighty-two developers (the Developers)[4] and eight contractors (the Contractors)[5] allegedly responsible for planning, designing, and constructing the projects on which Tarazon was exposed to asbestos between 1968 and 1993. Within its complaint, the City alleged the third-party defendants were solely responsible for the selection, installation, and disposal of any asbestos-laden products used in their respective projects, and therefore, the Contractors and Developers were required to indemnify the City against Tarazon's claims — the Contractors by virtue of their construction contracts and right-of-way permits, and the Developers by virtue of City ordinances incorporated within development permits.

---

[2]        We assume the truth of the well-pled facts of the third-party complaint and construe them in the light most favorable to the City as the non-moving party. *See Napier v. Bertram*, 191 Ariz. 238, 239, ¶ 1 (1998) (motion for judgment on the pleadings) (citing *Thompson v. Better-Bilt Aluminum Prod. Co.*, 171 Ariz. 550, 558 (1992)); *Lerner v. DMB Realty, L.L.C.*, 234 Ariz. 397, 401, ¶ 10 (App. 2014) (motion to dismiss) (quoting *Cullen v. Auto-Owners Ins.*, 218 Ariz. 417, 419, ¶ 7 (2008)).

[3]        When Tarazon died in 2014, the complaint was amended to include a wrongful death claim against the City and other defendants.

[4]        Of the named developers, fifteen appeared and defended against the City's third-party complaint.

[5]        Of the named contractors, four appeared and defended against the City's third-party complaint.

¶4 Each of the City's contracts with the Contractors provided that "[t]he Contractor agrees to indemnify and save harmless the City of Phoenix . . . from all suits, including attorneys' fees and cost of litigation . . . of any character or any nature arising out of the work done in fulfillment of the terms of th[e] contract." The permits issued to the Developers do not contain any specific covenant to indemnify, but rather state the permittee "agrees to perform all work in accordance with" certain agreed-upon plans and specifications, and that the permit is issued "on the express conditions that every agreement and covenant contained in th[e] permit is faithfully performed." As the City alleges, the agreed-upon plans incorporate specifications required by the Maricopa Association of Governments, which in turn require the permittees to "observe and comply with all such laws, ordinances, regulations, codes, orders and decrees." Among those ordinances is the following indemnification provision:

> The permittee agrees to indemnify and save harmless the City of Phoenix . . . from all suits, including attorneys' fees and costs of litigation . . . of any character or any nature arising out of or in connection with any act or omission of the permittee, his agents and employees, and of any subcontractor.

Phx. City Code § 31-40.

¶5 The Appellees asserted through various motions and joinders that the City's claims for indemnification were barred by the statute of repose contained in A.R.S. § 12-552(A), which provides:

> Notwithstanding any other statute, no action or arbitration based in contract may be instituted or maintained against a person who develops or develops and sells real property, or performs or furnishes the design, specifications, surveying, planning, supervision, testing, construction or observation of construction of an improvement to real property more than eight years after substantial completion of the improvement to real property.

In response, the City argued that, as a governmental entity, it is exempt from the statute of repose.

¶6 After briefing and oral argument, the trial court dismissed the City's third-party complaint in its entirety. The City filed a motion for reconsideration, which was denied. The court later deemed Appellees the successful parties in a contract action and, after considering the relevant factors identified in *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570

(1985), awarded attorneys' fees pursuant to A.R.S. § 12-341.01(A) to those parties who had properly requested them. The City timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I.    The City Is Not Exempt from the Statute of Repose Contained in A.R.S. § 12-552.

¶7          It is undisputed that the City filed its third-party complaint more than eight years after completion of the construction projects on which Tarazon worked. The City argues, however, the trial court erred in dismissing the third-party complaint because, as a political subdivision of the State of Arizona, it is exempt from all limitations periods and the period of repose contained in A.R.S. § 12-552(A). Whether A.R.S. § 12-552(A) applies to a claim brought by a governmental entity is an issue of first impression.

¶8          The interpretation and application of a statute presents a question of law which we review *de novo*. *First Fin. Bank, N.A. v. Claassen*, 238 Ariz. 160, 162, ¶ 8 (App. 2015) (citing *Schwarz v. City of Glendale*, 190 Ariz. 508, 510 (App. 1997)). We also review *de novo* the court's dismissal of a complaint as time-barred. *See Shaw v. CTVT Motors, Inc.*, 232 Ariz. 30, 31, ¶ 8 (App. 2013) (motion for judgment on the pleadings) (citing *Save Our Valley Ass'n v. Ariz. Corp. Comm'n*, 216 Ariz. 216, 218-19, ¶ 6 (App. 2007)); *Andrews ex rel. Woodard v. Eddie's Place, Inc.*, 199 Ariz. 240, 241, ¶ 1 (App. 2000) (motion to dismiss).

¶9          Initially, the City argues "it is old and familiar law" that limitations of actions do not apply to the State or its political subdivisions. *See State ex rel. Dep't of Health Servs. v. Cochise Cnty.*, 166 Ariz. 75, 78 (1990) (quoting *Whiteacre v. Rector*, 70 Va. 714, 716 (1878)). The City relies upon the common law doctrine of *nullum tempus occurrit regi* — "time does not run against the king." *See, e.g., City of Bisbee v. Cochise Cnty.*, 52 Ariz. 1, 18 (1938). This doctrine has been codified by A.R.S. § 12-510, which states: "Except as provided in A.R.S. § 12-529, the state shall not be barred by the limitations of actions prescribed in this chapter."[6] *See In re Diamond Benefits Life Ins.*, 184 Ariz. 94, 96 (1995).

---

[6]          The City argues the *nullum tempus* doctrine is only partially codified within A.R.S. § 12-510, suggesting that some vestige of the common law

¶10 When interpreting a statute, "we look first to the plain language of the statute as the most reliable indicator of its meaning." *Harris Corp. v. Ariz. Dep't of Revenue*, 233 Ariz. 377, 381, ¶ 13 (App. 2013) (quoting *State v. Mitchell*, 204 Ariz. 216, 218, ¶ 12 (App. 2003)). Where a statute is unambiguous, we apply its terms as written. *Berndt v. Ariz. Dep't of Corrections*, 238 Ariz. 524, 528, ¶ 11 (App. 2015) (quoting *Fleming v. Dep't of Public Safety*, 237 Ariz. 414, 417, ¶ 12 (2015)).

¶11 Here, the plain language of A.R.S. § 12-552(A) states that, "[n]otwithstanding any other statute," no action may be filed more than eight years after substantial completion of the improvement to real property. Appellees argue the "notwithstanding" phrase means the exemption from limitations granted to governmental entities in A.R.S. § 12-510 does not apply to the eight-year statute of repose in A.R.S. § 12-552.[7] Consistent with the commonly understood meaning of the phrase, "[t]he legislature has often used language such as 'notwithstanding any other statute' or 'notwithstanding any other provision to the contrary' to indicate that a particular provision will trump any conflicting statutes." *State v. Jones*, 232 Ariz. 448, 450, ¶ 11 (App. 2013) (citing examples), *vacated on other grounds*, 235 Ariz. 501 (2014); *see also State v. Pereyra*, 199 Ariz. 352, 354, ¶ 7 (App. 2001) (holding that a statute containing the phrase "notwithstanding any law to the contrary" operated to "explicitly and comprehensively

---

doctrine remains to exempt its claims from the statute of repose, notwithstanding A.R.S. § 12-510. This may be true to the extent a limitations period is found outside Title 12, Chapter 5 of the Arizona Revised Statutes. *See Dep't of Health Servs.*, 166 Ariz. at 77 n.3 (noting A.R.S. § 12-510 "limits its provisions to statutes of limitation in 'this chapter,' referring to chapter 5, title 12" and holding that the statute would not necessarily preclude application of the common law doctrine of *nullum tempus* because A.R.S. § 12-510 is "a partial codification"). But, the distinction has no relevance in the immediate case because the repose period at issue is found within the relevant chapter.

[7] For purposes of this Opinion, we assume without deciding that the statute of repose is a limitations period within the meaning of A.R.S. § 12-510. *But see Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121, 127, ¶ 23 (2011) ("In Arizona's legislative scheme, statutes of repose differ in purpose and operation from statutes of limitations.").

supersede[]" laws providing otherwise).[8]   Thus, A.R.S. § 12-552(A) explicitly renders inapplicable the *nullum tempus* doctrine reflected in A.R.S. § 12-510.

**¶12**        The City argues A.R.S. § 12-510 contains only one explicit exception for those claims described within A.R.S. § 12-529,[9] and therefore, A.R.S. § 12-552(A) does not expressly subject the City to the statute of repose.  The City relies upon a line of cases suggesting a governmental entity is subject to limitations periods only upon an "express[] and definite[] declar[ation]" by the legislature.  *City of Bisbee*, 52 Ariz. at 10; *see also Kerby v. State ex rel. Frohmiller*, 62 Ariz. 294, 308 (1945); *State v. Martin*, 59 Ariz. 438, 448 (1942); *State ex rel. Sullivan v. Moore*, 49 Ariz. 51, 62 (1937).  But, our supreme court more recently held a governmental entity may be made subject to a limitations period either "by express inclusion in such a limitation *or by necessary inference*."  *Dep't of Health Servs.*, 166 Ariz. at 78 (quoting *Commonwealth ex rel. Pross v. Bd. of Supervisors*, 303 S.E.2d 887, 889 (Va. 1983)) (emphasis added).  We need not rely on any necessary inference, however, because we are convinced the language in A.R.S. § 12-552(A) is express and definite; its plain and unambiguous language directs that the repose period applies to *all* actions or arbitrations based in contract "notwithstanding" the provisions of A.R.S. § 12-510.  *See supra* ¶ 11.

**¶13**        Moreover, we presume the legislature knew the existing laws, including A.R.S. § 12-510, when it enacted A.R.S. § 12-552 almost ninety years later.  *See Daou v. Harris*, 139 Ariz. 353, 357 (1984) (citing *Ariz. State Bd. of Dirs. for Junior Colls. v. Phx. Union High Sch.*, 102 Ariz. 69, 72 (1967)).  Had the legislature intended the exemption in A.R.S. § 12-510 to apply to the claims defined within A.R.S. § 12-552, it would have undoubtedly said so,

---

[8]        The City argues the trial court erred in applying *Pereyra*, which interpreted the phrase "notwithstanding any law to the contrary," rather than the phrase presented here, "notwithstanding any other statute." Because we reject the City's argument that A.R.S. § 12-510 only partially codified the common law *nullum tempus* doctrine for purposes of Title 12, Chapter 5 of the Arizona Revised Statutes, *see supra* n.6, we find no meaningful distinction between the two phrases that would render *Pereyra* inapplicable or unpersuasive.

[9]        No party to the appeal has argued the exception found within A.R.S. § 12-529, relating to suits involving public trust land and navigable watercourses, applies here.

rather than expressly providing in A.R.S. § 12-552 that the newer statute would control "notwithstanding any other statute."

**¶14**        The City also argues by implication that application of A.R.S. § 12-552(A) to a governmental entity leads to an absurd result because it may prevent the City from acting "on the public's behalf and for the public's benefit." *See Tucson Unified Sch. Dist. v. Owens-Corning Fiberglass Corp.*, 174 Ariz. 336, 337 (1993) (holding A.R.S. § 12-510 is intended "to protect the public from the negligence of public officers that might deprive the public of its rights to redress against wrongdoers"). This argument is unpersuasive, however, given the distinct purpose of the statute of repose embodied in A.R.S. § 12-552: "'to establish a limit beyond which no suit may be pursued.'" *Albano*, 227 Ariz. at 127, ¶ 24 (quoting *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240, ¶ 12 (App. 2006)). The decision to enact a statute of repose thus reflects "a legislative balance of the respective rights of potential plaintiffs and defendants." *Id.* (quoting *Snyder v. Love*, 153 P.3d 571, 573 (Mont. 2006)). Section 12-552(A) was specifically enacted to provide a finite period during which an action against persons engaged in the development or construction of real property could be brought and reflects a policy determination to relieve those persons from what was previously "an indeterminable period of liability exposure." *Id.* at 126, ¶ 19 (citing *Hershey v. Rich Rosen Constr. Co.*, 169 Ariz. 110, 116 (App. 1991); *Sheibels v. Estes Homes*, 161 Ariz. 403, 404 (App. 1989); S. Fact Sheet (Mar. 20, 1989), S.B. 1305, 39th Leg., 1st Reg. Sess. (Ariz. 1989); and *Evans*, 215 Ariz. at 239, ¶ 9); *accord Shasta View Irrigation Dist. v. Amoco Chemistry Corp.*, 986 P.2d 536, 543 (Or. 1999) (holding the policy behind *nullum tempus* inapplicable to a statute of repose). Although the City's interest in acting for the public benefit is valid, we assume the legislature considered that interest when it declined to exempt the City and other governmental entities from the statute of repose. Application of the statute's plain language serves its purpose to limit liability exposure and, by definition, does not create an absurdity.

**¶15**        Finally, while we need not consider the legislative history or purpose of a statute to effectuate its plain language, the history of A.R.S. § 12-552 is particularly compelling. Section 12-552(A), adopting the eight-year limitations period, was enacted in 1989. One year later, the Central Arizona Water Conservation District (CAWCD), a municipal corporation, discovered defects in the 336-mile long Central Arizona Project (CAP)

system,[10] completed more than twelve years before, which would cost $150 million to repair. *See* S. Fact Sheet (May 27, 1992), S.B. 1478, 40th Leg., 2d Reg. Sess. (Ariz. 1992). Acknowledging that any claim by CAWCD against the contractors was barred by A.R.S. § 12-552(A) and that, without further action, the burden of the repairs would fall to the taxpayers, *see* Minutes of S. Comm. on Judiciary at 30-33 (April 7, 1992), 40th Leg., 2d Reg. Sess. (Ariz. 1992), the legislature amended the statute to add subsection (G), stating that the eight-year period would not begin to run until September 15, 1989 "[w]ith respect to an improvement to real property that was substantially complete on or before September 15, 1989," A.R.S. § 12-552(G). This amendment, which provided CAWCD an additional five years in which to sue for the CAP defects, reflected the legislature's understanding that A.R.S. § 12-552 would have otherwise barred CAWCD's claims. Simply put, there would have been no need for the legislature to amend A.R.S. § 12-552 to extend the repose period to allow CAWCD to bring suit over the CAP defects if the statute did not apply to government entities.[11]

## II. The Indemnity Obligation Contained Within Permits Issued to the Developers is Based in Contract for Purposes of A.R.S. § 12-552.

¶16 The City also argues that because A.R.S. § 12-552(A) applies only to claims "based in contract," it does not apply to its claims against the Developers for defense and indemnification because those claims arise from permits issued by the City, rather than contracts. An "action based in contract" is defined within A.R.S. § 12-552(F) as "an action based on a written real estate contract, sales agreement, construction agreement, conveyance or written agreement for construction or for the services set forth in subsection A of this section," which includes all services related to the development, sale, design, or construction of an improvement to real property, down to the supervision and observation of the project. *See* A.R.S. § 12-552(A). Whether a cause of action is "based in contract" within the meaning of the statute is a question of law, which we review *de novo.*

---

[10] CAP is a system of aqueducts, tunnels, pumping plants, and pipelines designed to bring water from the Colorado River to more than five million people living in Central and Southern Arizona. Central Arizona Project, http://www.cap-az.com (last visited March 28, 2016).

[11] Appellees also argue generally that a statute of repose creates a substantive right for which there are no exceptions. Because we conclude the language of A.R.S. § 12-552(A) is unambiguous and supported by the statute's history and purpose, we need not address this broad proposition.

*Caruthers v. Underhill*, 230 Ariz. 513, 526, ¶ 58 (App. 2012) (citing *Schwab Sales, Inc. v. GN Constr. Co.*, 196 Ariz. 33, 36-37, ¶ 9 (App. 1998)).

**¶17**		The City initially argues A.R.S. § 12-552(F) "expressly defines specific contracts to which it applies" and "noticeably absent from the exclusive list" are permits or documents "related to" those specified. However, contrary to the City's position, the legislature did not mention any particular document by name within A.R.S. § 12-552(F). *See supra* ¶ 16. And, the omission of a specific type of agreement is not dispositive given the legislature's broad language and obvious intent to encompass any "written agreement . . . for the services set forth in subsection A." A.R.S. § 12-552(F); *cf. Hohokam Irrigation & Drainage Dist. v. Ariz. Pub. Serv. Co.*, 204 Ariz. 394, 399, ¶ 20 (2003) (considering "the purposes of the [applicable law], the broad statutory language, [and] the absence of specific language of prohibition" in rejecting an argument that the defendant's actions were prohibited by statute); *Braden Trust v. Cnty. of Yuma*, 205 Ariz. 272, 275, ¶ 15 (App. 2003) (concluding relevant statutes did not exempt dwellings for farm workers "[b]ecause the statutory language is broad enough to include farm-worker housing and the statutes at issue do not preclude residential dwellings"). The nature of the instrument bearing the indemnification agreement — here, a permit — is immaterial to whether a claim under the agreement is based in contract.[12]

**¶18**		The City next argues the issuance of a permit lacks the hallmark elements of a contract — i.e., the permits were not "dickered deals" reflecting offer, acceptance, consideration, mutual assent, and a sufficiently detailed statement of its terms. *See Muchesko v. Muchesko*, 191 Ariz. 265, 268 (App. 1997) (citing *Savoca Masonry Co. v. Homes & Son Constr. Co.*, 112 Ariz. 392, 394 (1975)). We disagree. Although the permits may not have been negotiated, such is not required. *Broemmer v. Abortion Servs. of Phx., Ltd.*, 173 Ariz. 148, 151 (1992) (noting even an adhesion contract is enforceable unless the contract or provision falls outside the reasonable expectations of the adhering party or the contract is unconscionable) (quoting *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 172 (Cal. 1981), and citing *Huff v. Bekins Moving & Storage Co.*, 145 Ariz. 496, 498 (App. 1985)). The Developers chose to accept the terms and conditions of the permits — including the potential for increased costs associated with their promise to

---

[12]	The City argues for the first time in its reply brief that the permit is actually a license, which it asserts, by definition, is not a contract. This argument was not properly presented on appeal, and we do not address it. *Preston v. Amadei*, 238 Ariz. 124, 132, ¶ 22 (App. 2015) (citing *Nelson v. Rice*, 198 Ariz. 563, 567 n.3, ¶ 11 (App. 2000)).

indemnify the City — in exchange for access to City property to complete their projects. The Developers' agreements to indemnify the City were part of the *quid pro quo* toward the issuance of the permits. When the Developers accepted the permits, they accepted and agreed to abide by the City's conditions. The absence of any express discussion about indemnification was consistent with the City's "take it or leave it" expectation, detailed within its opening brief, that "*if* a developer proceeded with a proposed development, *then* the developer would be required to defend and indemnify [the City]." We therefore reject the City's contention that the permits were not contracts for purposes of the statute of repose because they were something other than a "real offer-accepted, bargained-for-exchange, consideration-supported mutually assented-to contract." *See Dixon v. City of Phx.*, 173 Ariz. 612, 617-18 (App. 1992) (finding a valid contract existed where landowners granted an immediate right of access to their property in exchange for the City's promise to repair any damage to the property resulting from its entry); *see also First Church of Christ Scientist v. City of Seattle*, 964 P.2d 374, 379 (Wash. App. Ct. 1998) (characterizing an indemnification provision contained in a construction permit as an "agreement"); *accord Webster v. Klug & Smith,* 260 N.W.2d 686, 689-90 (Wis. 1978) (noting indemnity clauses are agreements between the parties).

¶**19**        This analysis does not change merely because the agreement was, as the City contends, "dictated by ordinance, not dickered as a deal" between the parties. Nor does the fact that the entirety of the parties' agreement with respect to indemnification comprises a single sentence persuade us it was not based in contract within the meaning of A.R.S. § 12-552. The City believed this same single sentence was a sufficient basis for its third-party complaint against Appellees.

¶**20**        The City also argues its third-party claim is an exercise of its police power to enforce a permit, not a suit premised upon a contract. However, as Appellees correctly note, the ordinance that gives rise to the City's indemnification claim is not a statute that applies to the general public. *See, e.g.,* A.R.S. § 40-360.44 (providing a person who violates the High Voltage Power Lines and Safety Restrictions Act "is liable to the public entity operating the high voltage overhead line for all damages to the facilities and all costs and expenses"). Nor is the City seeking to revoke a permit or impose a fine based upon a perceived violation of a City ordinance. *See* 9A Eugene McQuillin, *The Law of Municipal Corporations* § 26:215 (3d ed. 2005) (acknowledging the issuance of development and construction permits is an "exercise of municipal police power"). The City's claim for indemnification is therefore not, as it suggests, an exercise of police power intended to provide "for the promotion of public safety,

12

health, morals, and for the public welfare," *Dano v. Collins*, 166 Ariz. 322, 323 (App. 1990) (citations omitted), akin to "regulat[ing] streets (and concomitant traffic) during construction." The City's claim is for performance of a promise, made in furtherance of a commercial activity, memorialized in writing, and designed to allocate risk among the parties. *See Washington Elementary Sch. Dist. No. 6 v. Baglino Corp.*, 169 Ariz. 58, 60 (1991) (noting parties use indemnity provisions "to allocate risks between them").

**¶21** The City argues its permits "did not legally obligate the developers to construct or complete any development," and "never mention[] the words 'develop,' 'development,' 'sell,' 'real property,' or 'services'" and therefore "can never be a written agreement for real[ ]estate development and sales services." But, A.R.S. § 12-552(A) is much broader than the City recognizes. By its terms, the statute of repose applies to claims against anyone who: "develops or develops and sells real property, or performs or furnishes the design, specifications, surveying, planning, supervision, testing, construction or observation of construction of an improvement to real property." A.R.S. § 12-552(A). Moreover, to the extent the Developers chose to exercise their rights under the permits to design and build improvements, the permits required them to provide those services in accordance with the City's specifications and standards.

**¶22** Accordingly, we conclude the permits forming the basis of the City's claims against the Developers are written agreements for qualifying services and those claims therefore are "based in contract" for purposes of A.R.S. § 12-552(A).[13]

---

[13] The City also argues a permit cannot be a valid contract because the Phoenix City Charter requires all contracts with the City be "executed in the name of the City of Phoenix by the Manager." *See* Phx. City Charter ch. XIX, § 1. However, the right-of-way permits at issue necessarily were issued with the consent of the City Manager. *See* Phx. City Code § 31-80(A) (authorizing the City Manager to issue permits); *see also Humphrey v. City of Phx.*, 55 Ariz. 374, 389 (1940) (rejecting the City's argument that a contract of the City's municipal housing authority was invalid because it was not executed by the City manager where municipal housing law separately authorized the housing authority to enter contracts, such as the one at issue, concerning slum clearance projects). Because the City authorized its manager to issue the permits, and the permits issued, the City cannot rightfully argue the agreements contained therein are somehow invalid or unenforceable for lack of a signature from the City Manager.

### III. The Developers Qualify for an Award of Attorneys' Fees Under A.R.S. § 12-341.01(A).

¶23 The City argues the trial court erred in awarding attorneys' fees to the Developers pursuant to A.R.S. § 12-341.01(A), reasserting its position that the third-party action did not arise out of contract. Whether A.R.S. § 12-341.01(A) applies to the City's claims is a question of statutory interpretation which we review *de novo*. *Chaurasia v. General Motors Corp.*, 212 Ariz. 18, 26, ¶ 24 (App. 2006) (citing *Hampton v. Glendale Union High Sch. Dist.*, 172 Ariz. 431, 433 (App. 1992)).

¶24 Under A.R.S. § 12-341.01(A), the trial court may, in its discretion, award attorneys' fees to the successful party "[i]n any contested action arising out of contract, express or implied." An award under A.R.S. § 12-341.01(A) is justified where the contract has "some causal connection with the claim." *Chaurasia*, 212 Ariz. at 26, ¶ 25 (citing *Marcus v. Fox*, 150 Ariz. 333, 335 (1986)). As we have held, the claims pled by the City against the Developers exist by virtue of indemnification agreements memorialized in permits issued by the City. *See supra* ¶¶ 18-22. And, this Court previously affirmed an award of attorneys' fees under A.R.S. § 12-341.01(A) to a party who was successful in establishing a right to indemnification in *INA Insurance Co. of North America v. Valley Forge Insurance Co.*, 150 Ariz. 248, 256 (App. 1986). *Cf. Forty-Four Hundred East Broadway Co. v. 4400 East Broadway*, 139 Ariz. 498, 503 (App. 1983) (considering a party's success in obtaining indemnification for attorneys' fees as a factor in determining who was the successful party for purposes of awarding attorneys' fees under a contract). Therefore, we find no error in the decision of the trial court to award attorneys' fees to the Developers.

### IV. The Trial Court Acted Within its Discretion in Setting the Amount of Fees Awarded to Continental.

¶25 A successful party in a contract action is entitled to recover fees for "'every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest.'" *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 188 (App. 1983) (quoting *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982)). The City argues the trial court's award of $110,000 in attorneys' fees to CHI Construction Co. and Continental Homes, Inc. (collectively, Continental) was unreasonable, claiming the hourly rates Continental reported were unreasonably high and its fees application contained duplicative charges, "excessive partner fees (with associates performing a small fraction of the work)," and unnecessary tasks. We

review the amount of an award of attorneys' fees for an abuse of discretion. *See Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17 (App. 2006) (citing *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004)). "To find an abuse of discretion, there must either be no evidence to support the court's conclusion or the reasons given by the court must be 'clearly untenable, legally incorrect, or amount to a denial of justice.'" *Id.* (quoting *State v. Chapple*, 135 Ariz. 281, 297 n.18 (1983), and citing *United Imps. & Exps., Inc. v. Superior Court*, 134 Ariz. 43, 46 (1982)).

¶26 Here, following briefing and oral argument, the trial court issued a detailed order containing specific findings regarding the relevant factors set forth in *Associated Indemnity*, including that: (1) the merits of the City's claim were disputed; (2) the City did not make any offers to settle the case; (3) Continental's efforts in investigating the issues, preparing pleadings, presenting a motion for judgment on the pleadings, and arguing before the court were necessary; (4) the City did not argue an award of fees would be an extreme hardship; (5) the City undertook a risk in bringing novel claims approximately twenty years after the completion of the projects at issue; and (6) an award of fees would mitigate the burden to Continental of litigating a meritorious defense. *See Assoc. Indem.*, 143 Ariz. at 570 (listing factors "useful to assist the trial judge in determining whether attorney's fees should be granted" under A.R.S. § 12-341.01(A)) (citing *Wistuber v. Paradise Valley Unified Sch. Dist.*, 141 Ariz. 346, 350 (1984), and *Sloatman v. Gibbons*, 104 Ariz. 429, 430-31 (1969)). The court explicitly "recognize[d] that Continental took the lead in filing the [m]otion that ultimately led to the dismissal of numerous third party defendants" — a strategy that reduced the amount of fees sought by other Appellees. The court also specifically "note[d] the higher hourly rate especially when multiple people in the firm worked on the same issue." After considering all of these factors, the court awarded Continental $110,000 of the $140,437.50 in attorneys' fees it requested.

¶27 These findings are supported by the record. This matter began as a complex personal injury claim against multiple defendants based upon events spanning decades and culminating in the death of the plaintiff. The case was further complicated by the City's addition of almost ninety additional third-party defendants, who were forced to participate in the litigation until the City's claims for indemnification were finally resolved six months prior to trial. Additionally, the trial court's award of less than what Continental requested reflects it considered the City's arguments that the fees Continental sought were not entirely reasonable and necessary. The trial court is in a superior position to evaluate what are essentially factual matters involving the nature of the litigation and the

reasonableness of the parties' corresponding efforts to defend and/or resolve the dispute, *see Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 574 (App. 1994) (quoting *Assoc. Indem.*, 143 Ariz. at 571), and we cannot say, on this record, that the award itself was unreasonable.

## CONCLUSION

**¶28**  The orders of the trial court are affirmed.

**¶29**  Appellees request an award of attorneys' fees and costs pursuant to A.R.S. §§ 12-341, -341.01(A), and -348. As the prevailing parties, Appellees are awarded their costs and reasonable attorneys' fees incurred on appeal upon compliance with ARCAP 21(b).



Ruth A. Willingham · Clerk of the Court
FILED: ama