**310 P.2d 510**

**Leonard VANCE and Josephine S. Vance, his wife, Petitioners,**

**v.**

**Obed M. LASSEN, State Land Commissioner of the State of Arizona, The State Land Department and the State of Arizona, Respondents.**

**No. 6401.**

Supreme Court of Arizona.

May 7, 1957.

Herbert Mallamo, Phoenix, for petitioners.

Robert Morrison, Atty. Gen., and Herbert B. Finn, Sp. Asst. Atty. Gen., for respondents.

LA PRADE, Justice.

An alternative writ was issued in this matter upon the application of petitioners

directing the State Land Commissioner to issue to the petitioners a permit to drill a new well in an area that had theretofore been designated as a critical groundwater area or show cause for its non-issuance.

The petition for the writ alleged that the petitioners were: (1) the owners of the SE¼ of Section 4, T1S, R4E, G&SRB&M; (2) that this land was located within the exterior boundaries of Salt River critical groundwater area theretofore regularly established; (3) that the lands had been continuously irrigated and cultivated for more than five years prior to June 23, 1948, and continuing to the time of filing the application for a permit; (4) that on January 18, 1957 they regularly applied for a permit to drill a new irrigation well on the lands to produce water to be used on them, as provided by section 45–313, A.R.S., and assigned as reasons an insufficient water allotment by the Salt River Valley Water Users' Association for the growing year of 1957; and (5) that the Land Commissioner had denied their application.

In the application filed with the Commissioner all of the foregoing facts were set forth. Applicants' application was for a permit for a "supplementary well". The Commissioner, in his letter of rejection, said that he was without authority to issue a permit for a "supplementary well".

The return to the writ admitted all the fact allegations of the application for the permit and the petition for the writ. Respondent denied that petitioners were entitled to a "supplementary well" for the reasons set forth in Ernst v. Collins, 81 Ariz. 178, 302 P.2d 941. By stipulation of counsel it appears that there never has been an irrigation well on the lands in question. We conclude that the application for the permit was in truth and fact an application for a new well in a critical groundwater area. There are no provisions in the groundwater code, Article 7 of Chapter 1, Title 45 of A.R.S., sections 45–301 to 45–324, relating to or authorizing "supplementary wells".

We believe that the pleadings create this issue: Can the State Land Commissioner lawfully reject an application for a permit to drill a new well to irrigate lands in critical groundwater area for lands that qualify under the provisions of section 45–314?

Our present groundwater code, and particularly sections 45–313 and 45–314, A.R.S., furnish the answer to the question propounded. These sections read as follows:

"§ 45–313. Application for permit to construct irrigation well within critical groundwater area

"A. No person, except as otherwise provided, shall construct an irrigation well in a critical groundwater area established as provided by this article without a permit therefor.

"B. A person proposing to construct an irrigation well within a critical groundwater area shall make application to the department for a permit authorizing such construction which shall contain the following:

"1. Name and address of applicant.

"2. Name and address of the owner of the land on which the well is to be constructed.

"3. Location of the well.

"4. Groundwater basin or subdivision thereof, if designated, within the boundaries of which the withdrawal is to be made.

"5. Amount of water in acre feet per year to be withdrawn.

"6. Depth and type of construction proposed for the well.

"7. Legal description of the land on which use of groundwater is proposed to be made.

"8. Such other information as the department may require.

"C. No permit shall be required for completion of any well located within a critical groundwater area and substantially commenced prior to the designation of the critical groundwater area, but the well or other works for the withdrawal of ground water thus substantially commenced shall be completed within one year from the date of designation or alteration of the critical groundwater area. As amended Laws 1956, Ch. 1, § 1."

"§ 45–314. Issuance of permit

"A. Upon application as provided in § 45–313, the department shall issue a permit for the construction of the proposed well, but no permit shall be issued for the construction of an irrigation well within any critical groundwater area for the irrigation of lands which on June 23, 1948, were not irrigated, or had not been cultivated within five years prior thereto.

"B. Except as provided in this article, no permit shall be issued to any person other than the owner of the land on which the proposed well is to be located, or to an irrigation or agricultural improvement district or other organized irrigation project for use upon lands within the district or project."

To interpret these two statutes requires no resort to statutory rules of construction for the language is clear and unambiguous. The legislative intent is patent.

It is plain that section 45–313 expressly authorizes the filing of an application for a permit to construct an irrigation well in a critical groundwater area. It also prohibits the drilling of any such well without a permit. Section 45–314 expressly directs the land department to issue the permit upon an application meeting the requirements of section 45–313, provided the lands qualify under section 45–314. We interpret

subsection A of section 45–314 to mean that lands qualify which were, on June 23, 1948, under irrigation or had been under cultivation at any time within the five years prior thereto.

These sections first came into our law in 1948 as sections 7 and 8 of Chapter 5, Laws 1948, 6th S.S., and are substantially as originally enacted. They were designated as sections 75–151 to 75–152 of the 1952 Supp. to the 1939 A.C.A. They remained in effect until March 18, 1953, on which date the legislature adopted a rather comprehensive act relating to underground water, and specifically designated practically all of the central valley of Arizona as a restricted area. The act recited that it was interim legislation and intended to cope with depletion of the groundwater resources, and stated that until effective permanent legislation could be enacted no new irrigation well could be drilled until March 31, 1954. Chapter 42, Laws 1953. It contained no general repeal of the 1948 act, but specifically provided that it should be deemed additional to the water code of 1948. The prohibitory period referred to was extended to March 31, 1955 by Chapter 86, Section 4, Laws 1954.

The foregoing legislative acts are referred to for the purpose of giving the legal background of the then prevailing law at the time the issues were created and passed upon in our decision of Ernst v. Collins, supra, relied on by respondent. On the date of entry of the decree which formed the basis for the appeal in that case, the prohibitory provisions of the 1953 act were controlling, and the decision was correct in holding that only replacement wells could be drilled, and that the proposed Collins well was not a true replacement well. The statement in the decision that the drilling of an entirely new well was not authorized under the statutes was too broad. The opinion failed to recognize that but for the 1953 act, suspending for one year the operation of the provisions of the 1948 act, new irrigation wells could have been drilled in critical groundwater areas on qualified lands. The legislature, in enacting the Revised Statutes of 1956, omitted as executed the two (one-year) prohibitive provisions. The facts reflect that petitioner is the owner of the land upon which the proposed well is to be located, and that the area sought to be irrigated had been irrigated and cultivated within five years prior to June 23, 1948. In addition, petitioners' application appears to comply with the statutory provisions and to in all respects be regular. The facts being as related, and the law being as we have declared it to be, it follows that there exists no legal excuse for nonissuance of the permit applied for by petitioners, and it is ordered that the alternative writ heretofore issued be made peremptory.

UDALL, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.