IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

CITY OF PHOENIX,
*Third-Party Plaintiff/Appellant,*

*v.*

GLENAYRE ELECTRONICS, INC.; WILLIAM LYON HOMES, INC.; KB HOME HOLDINGS, INC.; RICHMOND AMERICAN HOMES, INC.; MDC/WOOD, INC.; UDC HOMES, INC., NKA SHEA HOMES OF PHOENIX, INC. (FN) AND ELLIOTT HOMES, INC.; SWENGEL-ROBBINS CONTRACTING CO., INC.; AZTEC CONSTRUCTION, INC.; JNC, INC.; UH HOLDINGS, INC.; LOS PAISANOS DEVELOPMENT, INC.; MICHAEL NEWSOME; CHI CONSTRUCTION CO.; CONTINENTAL HOMES, INC.; PULTE HOME CORP.; DEL WEBB CORP.; WITTMAN CONTRACTING CO.; JEFF BLANDFORD INVESTMENTS, INC.,
*Third-Party Defendants/Appellees.*

No. CV-16-0126-PR
Filed May 10, 2017

Appeal from the Superior Court in Maricopa County
The Honorable Douglas L. Rayes, Judge
The Honorable Randall H. Warner, Judge
The Honorable Lori Horn Bustamante, Judge

No. CV2013-001762
**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

Opinion of the Court of Appeals, Division One
240 Ariz. 80, 375 P.3d 1189 (App. 2016)
**VACATED IN PART**

COUNSEL:

Mary O'Grady (argued), Eric M. Fraser, Jana L. Sutton, Osborn Maledon, P.A., Phoenix; and Brad Holm, Phoenix City Attorney, Phoenix, Attorneys for City of Phoenix

Kevin E. O'Malley (argued), Mark A. Fuller, Thomas A. Maraz, Gallagher & Kennedy, P.A., Phoenix, Attorneys for CHI Construction Company and Continental Homes, Inc.

Dennis I. Wilenchik, John D. Wilenchik, Colleen C. Thomas, Wilenchik & Bartness, P.C., Phoenix, Attorneys for Jeff Blandford Investments, Inc.

Eileen Dennis GilBride, Jones, Skelton & Hochuli, P.L.C., Phoenix, Attorneys for Amici Curiae Apache, Cochise, Coconino, Graham, Greenlee, La Paz, Maricopa, Navajo, Pinal, Yavapai, and Yuma Counties, the Town of Gilbert, the League of Arizona Cities and Towns and the Arizona Municipal Risk Retention Pool

Thomas J. Shorall Jr., Jason J. Boblick, Shorall McGoldrick Brinkmann, Phoenix, Attorneys for Wittman Contracting Company

Richard K. Mahrle, Gammage & Burnham, P.L.C., Phoenix, Attorneys for Swengel-Robbins Contracting Co., Inc.

Katherine E. Baker, Green & Baker Ltd., Scottsdale, Attorneys for Glenayre Electronics Inc.

Brad D. Bleichner, Berkes Crane Robinson & Seal LLP, Los Angeles, CA, Attorneys for William Lyon Homes, Inc.

Holly P. Davies, Alexix G. Terriquez, Lorber Greenfield & Polito LLP, Phoenix, Attorneys for KB Home Holdings, Inc., Richmond American Homes, Inc. and MDC/Wood, Inc.

Jill Ann Herman, Wood Smith Henning & Berman LLP, Phoenix, Attorneys for UDC Homes Inc., nka Shea Homes of Phoenix Inc. (FN) and Elliot Homes Inc.

Joseph A. Kula, Benjamin R. Eid, Law Office of Amy M. Hamilton, Scottsdale, Attorneys for Aztec Construction, Inc.

Daniel D. Maynard, Maynard Cronin Erickson Curran & Reiter PLC, Phoenix, Attorneys for JNC, Inc. and UH Holdings, Inc.

Vincent J. Montell, Michael J. Ponzo, Quintairos Prieto Wood & Boyer PA, Phoenix, Attorneys for Los Paisanos Development, Inc.

Michael S. Rubin, Stephen E. Richman, Dickinson Wright PLLC, Phoenix, Attorneys for Pulte Home Corporation and Del Webb Corporation

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES and JUSTICES BRUTINEL, BOLICK, GOULD, LOPEZ, and BERCH (RETIRED)* joined.

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

¶1 Under A.R.S. § 12-510, claims by governmental entities generally are not barred by statutes of limitations. For actions relating to real property, however, Arizona's statute of repose provides that, "notwithstanding any other statute," an action "based in contract" against certain identified parties must be filed within "eight years after substantial completion of the improvement of real property." A.R.S. § 12-552(A). We hold that governmental entities' contract-based actions (including claims for indemnification) that fall within § 12-552(A) are subject to that statute's proscription, notwithstanding § 12-510 or the common law doctrine known as "nullum tempus occurit regi" (time does not run against the king). For the contractors in this case having the requisite contractual relationship with the City of Phoenix, we hold that the statute of repose applies; but for the developers whose only relationship with the City is as permittees, the statute of repose does not apply.

**I.**

¶2 The superior court dismissed the City of Phoenix's indemnity claims under Arizona Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. On review, therefore, we "assume the truth of all well-pleaded factual allegations" in the City's pleading and "indulge all reasonable inferences from those facts." *Coleman v. City of Mesa*, 230 Ariz. 352, 356 ¶ 9, 284 P.3d 863, 867 (2012); *see also Watts v. Medicis Pharm. Corp.*, 239 Ariz. 19, 22 ¶ 2, 365 P.3d 944, 947 (2016).

¶3 In 2013, Carlos Tarazon sued the City and numerous co-defendants after he developed mesothelioma, allegedly resulting from long-term exposure to asbestos while installing and repairing water piping for the various defendants. (After Tarazon died in 2014, the personal injury action was converted to one for wrongful death.) The City filed a third-party complaint against eighty-two developers (the "Developers") and eight contractors (the "Contractors"), alleging that they had agreed to defend and indemnify the City against negligence claims arising from the construction projects on which Tarazon worked.

---

* Justice Ann A. Scott Timmer has recused herself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Rebecca White Berch, Justice of the Arizona Supreme Court (Retired), was designated to sit in this matter.

¶4        The City alleged that the Contractors separately contracted with it to perform certain water infrastructure projects between 1960 and 2000. The contracts include a provision stating, "[t]he Contractor agrees to indemnify and save harmless the City of Phoenix . . . from all suits, including attorneys' fees and cost of litigation . . . of any character or any nature arising out of the work done in fulfillment of the terms of this contract."

¶5        The Developers undertook their own water-system projects, but only after applying for and obtaining right-of-way permits from the City, as required by Phoenix City Code § 31-35. As permittees, the Developers were subject to Phoenix City Code § 31-40, which provides:

> The permittee agrees to indemnify and save harmless the City of Phoenix . . . from all suits . . . arising out of or in connection with any act or omission of the permittee, his agents and employees, and of any subcontractor . . . which results directly or indirectly in the injury to or death of any person or persons . . . .

¶6        The permits also incorporated the Developers' project plans and specifications, which included the Maricopa Association of Governments Specifications (the "MAGS"). The MAGS obligated the Developers to "at all times observe and comply with all such laws, ordinances, regulations, codes, orders, and decrees." By incorporating the MAGS, the permits memorialized the Developers' preexisting obligation to comply with the City's laws, including City Code § 31-40.

¶7        The Developers and Contractors moved to dismiss the City's third-party claims under Rule 12(b)(6), arguing that those claims were based in contract and barred by the eight-year statute of repose in § 12-552(A). The City responded that the statute does not apply to the state's political subdivisions and that the Developers' indemnity obligation was not based in contract but instead arose under City Code § 31-40. The superior court rejected those arguments, ruled that § 12-552(A) applied to bar the City's claims, granted the motion to dismiss, and certified its decision as final under Arizona Rule of Civil Procedure 54(b).

¶8        The court of appeals affirmed, holding that the City's indemnity claims are "time-barred" because "A.R.S. § 12-552 applies to governmental entities and . . . the City's claims are based in contract within the meaning of A.R.S. § 12-552(F)." *City of Phoenix v. Glenayre Elec., Inc.*, 240 Ariz. 80, 82-83 ¶ 1, 375 P.3d 1189, 1191-92 (App. 2016). The court concluded that the phrase "[n]otwithstanding any other statute" in § 12-552(A) plainly and "explicitly renders inapplicable the *nullum tempus* doctrine reflected in A.R.S. § 12-510." *Id.* at 84-85 ¶ 11, 375 P.3d at 1193-94. The court also agreed with the superior court that the Developers' permits contractually obligated

them to indemnify the City, and thus the City's indemnity claims were based in contract and subject to § 12-552(A).  *Id.* at 87 ¶ 18, 88 ¶ 22, 375 P.3d at 1196, 1197.  We granted review because application of the statute of repose to governmental entities and interpretation of § 12-552(F) are issues of statewide importance that are likely to recur. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶9        We review the superior court's dismissal of claims under Rule 12(b)(6) de novo, as we do the interpretation of statutes.  *Watts*, 239 Ariz. at 23 ¶ 9, 365 P.3d at 948.

## A.

¶10        Arizona case law has consistently recognized the common law doctrine "nullum tempus occurrit regi"—time does not run against the king.  *See*, *e.g.*, *Kerby v. State ex rel. Frohmiller*, 62 Ariz. 294, 307, 157 P.2d 698, 704 (1945) (noting the established rule that statutes of limitations "do not run or operate against the state"); *City of Bisbee v. Cochise County* (*Bisbee III*), 52 Ariz. 1, 9, 78 P.2d 982, 985 (1938) (finding "ample justification for the rule, stated in the ancient maxim and confirmed by our Legislature from time to time, that statutes of limitations which govern between private individuals do not apply in proceedings on behalf of the state").  The doctrine is based on the premise that, although time limitations apply to private parties so as to prevent fraudulent, stale claims, time stands still, as it were, for the state because "[t]he officers who are charged with the active duty of enforcing [the] rights [of the state] have no personal profit to gain thereby, and therefore no inducement for the bringing of false and unwarranted actions."  *Bisbee III*, 52 Ariz. at 9, 78 P.2d at 985.

¶11        In *Bisbee III*, this Court held, in the last of three opinions in that case, that the nullum tempus doctrine generally "applies not only to the state itself when suing in its own name, but to all of its subdivisions," including municipalities acting with a public purpose to recover tax-related monies.  *Id.* at 18, 78 P.2d at 989.  In that case, Bisbee sued Cochise County to recover certain penalties and fees on delinquent taxes collected by the county but allegedly owed to the city.  *Id.* at 3, 78 P.2d at 983.  In defense, the county unsuccessfully argued that the city's claim was time-barred by a general statute of limitations requiring actions "[u]pon a liability created by statute" to be commenced within one year after the cause of action accrued.  *City of Bisbee v. Cochise Cty.*, 44 Ariz. 233, 243, 36 P.2d 559, 563 (1934) (quoting Ariz. Rev. Code § 2058(3) (1928), now A.R.S. § 12-541(5)).  On a second appeal after the case was remanded and tried, this Court again rejected the county's statute-of-limitations defense against the city's attempted collection of tax revenues, finding the nullum tempus doctrine applied "unless the Legislature has expressly permitted such a [defense]."  *City of Bisbee v. Cochise Cty.*, 50 Ariz. 360, 369, 72 P.2d 439, 443 (1937).  In *Bisbee III*, on which the City

here primarily relies, we confirmed that the nullum tempus doctrine generally applies to municipalities and therefore denied the petition for rehearing. 52 Ariz. at 18, 78 P.2d at 989.

¶12 For well over a century, our state's common law and statutes on this subject have overlapped. Even before statehood, Arizona's territorial legislature codified the nullum tempus doctrine. *See* Rev. Stat. Ariz. Territory § 44-2306 (Sec. 10) (1887). And as this Court observed in *Bisbee III*, the doctrine "has been re-enacted by our Legislature every time it has recodified the law." 52 Ariz. at 8, 78 P.2d at 985.

¶13 Entitled "Exemption of state from limitations," A.R.S. § 12-510 is the most recent codification and states: "Except as provided in § 12-529, the state shall not be barred by the limitations of actions prescribed in [chapter 5 of Title 12]." The exception found in § 12-529, relating to actions involving public trust lands and navigable watercourses, is not applicable here. But directly at issue is another provision in chapter 5 of Title 12, the statute of repose, which states in part:

> Notwithstanding any other statute, no action or arbitration based in contract may be instituted or maintained against a person who develops or develops and sells real property, or performs or furnishes the design, specifications, surveying, planning, supervision, testing, construction or observation of construction of an improvement to real property more than eight years after substantial completion of the improvement to real property.

A.R.S. § 12-552(A). Added by the legislature in 1989, this statute defines a substantive right limiting the "indeterminable period of liability exposure" faced by those engaged in development and construction activities traditionally. *Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121, 126, ¶ 19, 127 ¶ 26, 254 P.3d 360, 365, 366 (2011).

¶14 The subject construction projects on which Mr. Tarazon worked were completed more than eight years before the City filed its third-party complaint. The statute of repose in § 12-552(A) applies, then, unless the City is exempt from that provision. Based largely on *Bisbee III*, the City argues that the statute of repose does not apply to it and thus cannot bar its indemnity claims. In *Bisbee III*, this Court acknowledged the then-applicable predecessor statute to § 12-510 (Ariz. Rev. Code § 2056 (1928)) and remarked that the statute "does not add to []or subtract from the common-law rule, but is merely a legislative recognition and approval thereof." 52 Ariz. at 8, 78 P.2d at 985. We also observed that "statutes of limitations do not and should not apply to the state, in the absence of an express declaration to the contrary by the Legislature," *id.* at 8–9, 78 P.2d at 985, that is, "unless the Legislature has expressly and definitely declared that they do." *Id.* at 10, 78 P.2d at 985.

¶15        Relying on that language in *Bisbee III*, the City argues that the legislature has not "expressly and definitely declared" that § 12-552(A)'s limitation applies to governmental entities and, absent such an expression, the City is not bound by that statute.  According to the City, the legislature could have met that standard in either of two ways, but did neither.  First, the legislature could have expressly provided in § 12-510 an exception for § 12-552, just as § 12-510 does for § 12-529.  Or second, the legislature could have expressly declared in § 12-552 that the state and its political subdivisions are subject to its provisions. *Cf. State ex rel. Condon v. City of Columbia*, 528 S.E.2d 408, 412 (S.C. 2000) (stating that "the Legislature abandoned the nullum tempus doctrine long ago" by statutorily providing "'the limitations prescribed in this chapter . . . shall apply to actions brought in the name of the State'"); *see also* A.R.S. § 12-529 (stating that "any action brought by this state . . . based on a claim of navigability of any watercourse . . . is subject to all legal and equitable defenses which would be available if the claimant were not this state").

¶16        Although the legislature could have followed one of the avenues the City identifies, it was not required to do so to apply the statute of repose to all parties, including the state.  Section 12-552(A)'s introductory phrase, "[n]otwithstanding any other statute," makes clear that the statute of repose controls over other, potentially conflicting state laws.  By using that phrase in § 12-552(A), the legislature "has expressly and definitely declared" that the statute of repose controls over § 12-510's general exemption of governmental entities from statutes of limitations. *Bisbee III*, 52 Ariz. at 10, 78 P.2d at 985; *see State v. Jones*, 232 Ariz. 448, 450 ¶ 11, 306 P.3d 105, 107 (App. 2013), *vacated on other grounds by State v. Jones*, 235 Ariz. 501, 334 P.3d 191 (2014) (noting that "the legislature has often used language such as 'notwithstanding any other statute' . . . to indicate that a particular provision will trump any conflicting statutes").  We also note that the statute of limitations at issue in *Bisbee III*, unlike § 12-552, did not broadly apply "notwithstanding any other statute," *see supra* ¶ 11.

¶17        The City, however, asserts that the phrase "[n]otwithstanding any other statute" "is inherently generic" and "does not expressly and specifically limit the *government*'s rights."  But the word "any" is "broadly inclusive." *City of Phoenix v. Tanner*, 63 Ariz. 278, 280, 161 P.2d 923, 924 (1945); *see also United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting *Webster's Third New International Dictionary* 97 (1976)); *Mapoy v. Carroll*, 185 F.3d 224, 229 (4th Cir. 1999) (interpreting the word "any" to mean "all" when used in the phrase "notwithstanding any other provision of law"); *United States v. Fernandez (Appeal of U.S. by Atty. Gen.)*, 887 F.2d 465, 468 (4th Cir. 1989) (explaining the provision "notwithstanding any other provision of law . . . naturally means" the provision "should not be limited by other statutes").

¶18        In addition, the word "notwithstanding" means "without prevention or obstruction from or by; in spite of." *Premier Car Rental, Inc. v. Gov't Emps. Ins. Co.*, 637

N.Y.S.2d 177, 178-79 (NY App. Div. 1996) (quoting *Notwithstanding*, *Webster's Third New International Dictionary* 1545 (3d ed. 1961)). Thus, the limitation in § 12-552(A) applies broadly and inclusively to all other statutes. Like the United States Supreme Court, we do not require the legislature "to employ magical passwords" to accomplish its manifest intent. *Marcello v. Bonds*, 349 U.S. 302, 310 (1955) (concluding that a deportation statute's "sole and exclusive procedure" expressly superseded a different procedure under the Administrative Procedure Act even though the statute did not mention the Act, which required any modifications to its procedure to be express).

¶19 The history of the pertinent statutes supports our conclusion that § 12-552 overrides § 12-510's general provision exempting the state from limitations of actions. As noted above, § 12-510 and its predecessor territorial and state statutes date to the late 1800s. Against that longstanding backdrop, the legislature enacted § 12-552, including its "[n]otwithstanding any other statute" preface, in 1989. We presume that the legislature was aware that this more recent and specific statute, added to the same chapter in which § 12-510 appears, would effectively prevail over the former statute and govern actions and parties covered by the latter. *Cf. Daou v. Harris*, 139 Ariz. 353, 357, 678 P.2d 934, 938 (1984) (stating "we presume that the legislature, when it passes a statute, knows the existing laws").

¶20 In addition, the legislature amended § 12-552 in 1992 by adding subsection (G). Under that amendment, subsection (A)'s eight-year limitation period begins to run on September 15, 1989, for any "improvement to real property that was substantially complete on or before" that date. A.R.S. § 12-552(G). The history behind this amendment strongly suggests that the legislature recognized that § 12-552 otherwise time-barred the Central Arizona Water Conservation District (CAWCD) from bringing a nearly $150 million claim against parties that, according to the CAWCD, negligently constructed the underground piping for transporting water to central Arizona. *See* S. Fact Sheet (May 27, 1992), S.B. 1478, 40th Leg., 2d Reg. Sess. (Ariz. 1992). The legislative history convincingly reveals that the legislature added subsection (G) so that CAWCD could file its claims against the constructors within the eight-year time limit. *See also* Minutes of S. Comm. on Judiciary at 30-32 (April 7, 1992), 40th Leg., 2d Reg. Sess. (Ariz. 1992).

¶21 If, as the City asserts, § 12-552 neither applied to governmental entities such as CAWCD nor otherwise trumped § 12-510, the legislature (albeit the 1992 legislature, not the 1989 legislature that passed § 12-552) would not have needed to add subsection (G); that is, under the City's view, subsection (G) would be superfluous because even without any amendment, CAWCD, as a political subdivision of the state, was already exempt from § 12-552. We agree with the court of appeals that this history "is particularly compelling." *Glenayre*, 240 Ariz. at 86 ¶ 15, 375 P.3d at 1195.

**¶22** The City alternatively argues that, separate and apart from § 12-510, the common law nullum tempus doctrine applies to exempt governmental entities from § 12-552. *See* A.R.S. § 1-201 (stating that the common law applies insofar "as it is consistent with . . . and not repugnant to or inconsistent with the . . . laws of this state"); *Pleak v. Entrada Prop. Owners' Ass'n*, 207 Ariz. 418, 422 ¶ 12, 87 P.3d 831, 835 (2004) ("[I]f the common law is to be changed or abrogated by statute, the legislature must do so expressly or by necessary implication."); *Tucson Gas & Elec. Co. v. Schantz*, 5 Ariz. App. 511, 515, 428 P.2d 686, 690-91 (1967) (concluding that a narrow statute regarding record inspections did not supersede the broader common law right to inspect corporate records and noting that "the mere fact that a statute partially codifies the common law does not necessarily abolish the remainder of the common law rule"). We are not persuaded by this argument.

**¶23** This Court has observed that § 12-510 "is merely a partial codification" of the nullum tempus doctrine. *State ex rel. Dep't of Health Servs. v. Cochise Cty.*, 166 Ariz. 75, 77 n.3, 800 P.2d 578, 580 n.3 (1990). But that observation simply referred to "the fact that [§ 12-510] limits its provisions to statutes of limitations in 'this chapter,' referring to chapter 5, title 12." *Id.*; *see also Bisbee III*, 52 Ariz. at 8, 78 P.2d at 985 (noting that § 12-510's predecessor statute, which likewise referred to only "the limitations of actions prescribed in this chapter," "does not add to []or subtract from the common-law rule, but is merely a legislative recognition and approval thereof").

**¶24** Here, unlike the situation in *Tucson Gas*, the common law nullum tempus doctrine and the related statute (§ 12-510) do not differ in substance or scope. With respect to limitations in chapter 5 of title 12, the common law and § 12-510 are coterminous. *See In re Diamond Benefits Life Ins. Co. v. Resolute Holdings, Inc.*, 184 Ariz. 94, 96, 907 P.2d 63, 65 (1995) (noting that the common law nullum tempus doctrine is codified in § 12-510); *State ex rel. Conway v. Versluis*, 58 Ariz. 368, 380, 120 P.2d 410, 415 (1941) (describing § 12-510's predecessor statute as "merely a reenactment of the old common law"). Thus, for purposes of the limitation provisions in that chapter, the legislature's "notwithstanding" clause in § 12-552(A), at the least, overrides not only § 12-510 but also by "necessary implication" its common law nullum tempus counterpart. *Pleak*, 207 Ariz. at 422 ¶ 12, 87 P.3d at 835.

**¶25** Finally, the City cites several out of state cases in which courts applied the nullum tempus doctrine not only to statutes of limitations but also to statutes of repose. *See, e.g., State v. Lombardo Bros. Mason Contractors, Inc.*, 54 A.3d 1005, 1022 (Conn. 2012); *Rutgers, State Univ. of N.J. v. Grad P'ship*, 634 A.2d 1053, 1054-55, 1056 (N.J. Super. App. Div. 1993); *Rowan County Bd. of Educ. v. U.S. Gypsum Co.*, 418 S.E.2d 648, 657 (N.C. 1992). But unlike § 12-552, none of the statutes at issue in those cases stated they applied "notwithstanding any other statute" or contained other express language overriding the nullum tempus doctrine. Therefore, we find those cases inapposite and in some tension with *Albano*'s differentiation between statutes of limitations and statutes of repose. 227

Ariz. at 127 ¶¶ 23–24, 254 P.3d at 366. In sum, the superior court and court of appeals did not err in concluding that § 12-552 applies to the City's contract-based indemnity claims that fall within that statute's scope, notwithstanding § 12-510 or the common law nullum tempus doctrine.

**B.**

**¶26** The City also argues that, contrary to the court of appeals' opinion, its indemnity claims against the Developers are not "based in contract" within the meaning of § 12-552(A) and (F) and thus are not barred by that statute. We agree that dismissal of those claims under Rule 12(b)(6) was error.

**¶27** The eight-year limitation in § 12-552(A) applies to an action "based in contract." Subsection (F) defines the types of agreements that are "based in contract" and thereby limits the statute of repose to only those agreements. It states: "In this section an action based in contract is an action based on a written real estate contract, sales agreement, construction agreement, conveyance or written agreement for construction or for the services set forth in subsection A of this section." The issue is whether the indemnification provision in Phoenix Code § 31-40 creates a contract or agreement contemplated in subsection (F). That indemnification provision under which the City's claim against the Developers arises is not based on any of the agreements the legislature listed in subsection (F). Accordingly, the statute of repose does not bar the City from bringing its indemnity claims arising from Phoenix City Code § 31-40.[1]

**¶28** In ruling that § 12-552 barred the City's claims against the Developers, the court of appeals stated, "[t]he nature of the instrument bearing the indemnification agreement . . . is immaterial to whether a claim under the agreement is based in contract." *Glenayre*, 240 Ariz. at 87 ¶ 17, 375 P.3d at 1196. The court noted the statute's "broad" language and said it expressed "the legislature's . . . obvious intent to encompass any 'written agreement . . . for the services set forth in subsection A.'" *Id.* It then held that the permits required and issued by the City created a contractual

---

[1] The allegations in the City's third-party complaint arguably could also be read as asserting a contractual indemnity claim against both the Contractors and Developers. However, we must accord all reasonable inferences to the City's complaint, and in doing so, we conclude that the City has sufficiently pleaded an indemnity claim against the Developers arising from § 31-40 of the Code. *See Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008) (explaining that courts "must assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom"). If any further questions exist regarding the source or basis of the City's indemnity claims against the Developers, they can be addressed on remand.

relationship from which the City sought indemnification. *Id.* Based on the statutory language and the City Code, however, we reach a different conclusion.

¶29        As permittees, the Developers were subject to and governed by City Code § 31-40. *See supra* ¶ 5. The indemnity provision contained in that Code section is clearly not a "written real estate contract," "sales agreement," "construction agreement," "conveyance," or a "written agreement for construction." § 12-552(F). The question, then, is whether the Code's indemnity provision is a "written agreement . . . *for* the services set forth in subsection A." (Emphasis added.) Interpreted broadly, "for" could mean "in respect to" or "concerning" the services. *For*, *Webster's Third New International Dictionary* 886 (2002). Or, more narrowly, "for" could mean "with the purpose or object of," in the sense of engaging such services. *Id.*

¶30        We are not persuaded that a broad interpretation of the word "for" applies here. Subsection (F)'s phrase, "written agreement . . . for the services set forth in subsection A," serves as a catch-all provision. Pursuant to the *ejusdem generis* rule, the phrase must be construed to refer to the same type of agreement as the enumerated agreements in subsection (F). *See Bilke v. State*, 206 Ariz. 462, 465 ¶ 13, 80 P.3d 269, 272 (2003) (quoting *Black's Law Dictionary* 517 (6th ed. 1990), stating *ejusdem generis* applies "where general words follow the *enumeration* of particular classes of things"). The transactional nature of the other agreements listed in subsection (F) suggests that subsection (A) should apply to "breach of contract and implied warranty actions against developers, builders, and certain others." *Albano*, 227 Ariz. at 126 ¶ 19, 254 P.3d at 365 (quoting *Evans Wythecombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 239 ¶ 9, 159 P.3d 547, 549 (App. 2006)). In *Albano*, we also noted that "[t]he Legislature enacted § 12-552 to limit the 'time period during which action may be brought against those engaged in the development or construction of real property and activity related to the construction of real property.'" *Id.* (quoting Ariz. State Senate, Fact Sheet for S.B. 1305, 39th Leg., 1st Reg. Sess. (Mar. 20, 1989)); *cf. Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, 329 ¶ 44, 223 P.3d 664, 673 (2010) (stating § 12-552 applies to actions "involving the design, engineering, or construction of improvements to real property").

¶31        The real estate contract, sales agreement, and other listed agreements in subsection (F) are types of transactional agreements from which could arise the indeterminable liability that the legislature sought to prohibit for breach of contract and implied warranty actions. *See Albano*, 227 Ariz. at 126 ¶ 19, 254 P.3d at 365 ("Before § 12-552 was enacted, developers and builders faced an indeterminable period of liability exposure."). Interpreting "for" broadly to mean "concerning" would extend the statute of repose far beyond such claims and could, for example, preclude most claims against a construction company; this is so because any contract necessarily used for the company's internal or external operations would broadly "concern" the construction of real property, but would not be limited to "activit[ies] related to the

construction of real property." *Id.* So interpreted, the word "for" would cause the statute to thwart the legislature's manifest intent to limit indeterminable liability for breach of contract and implied warranty actions. *Cf. Fry's Food Stores of Arizona, Inc. v. Mather & Associates, Inc.*, 183 Ariz. 89, 91-92, 900 P.2d 1225, 1227-28 (App. 1995) (stating that the language of § 12-552(F) "may reasonably be construed as inapplicable to negligence actions among contracting parties").

¶32 Moreover, if we interpret "for" to mean "concerning," then the catch-all phrase would incorporate each of subsection (F)'s enumerated agreements, rendering their enumeration superfluous. *See Fields v. Elected Officials' Retirement Plan*, 234 Ariz. 214, 218 ¶ 16, 320 P.3d 1160, 1164 (2014) (noting that the legislature generally avoids redundancy). The narrow interpretation of "for" avoids redundancy and encompasses all written agreements that have as their purpose engaging in the types of "services set forth in subsection (A)," such as developing, selling, or surveying property for construction projects. The narrow interpretation of "for" in subsection (F)'s catch-all phrase also parallels that subsection's phrase, a "written agreement for construction," which uses the word "for" to clearly mean "with the purpose or object of."

¶33 The remaining question is whether Phoenix Code § 31-40 creates a written agreement for any of the services set forth in subsection (A). Although the court of appeals' analysis and the Developers' argument focus on the inclusion of the MAGS in the permits issued to the Developers, the City's third-party complaint alleged that the Developers' indemnity obligation arose from § 31-40 of the Code itself.[2] *See supra* ¶ 5. The incorporation of the MAGS into the permit simply memorialized a preexisting regulatory obligation. But even if the permit created a contractual relationship between the City and the Developers, as the court of appeals held, that would not preclude finding an independent indemnity obligation under the City Code. *Cf. Unique Equip. Co., Inc. v. TRW Vehicle Safety Sys., Inc.*, 197 Ariz. 50, 55 ¶ 19, 3 P.3d 970, 975 (App. 1999) (recognizing "an independent statutory obligation to indemnify").

¶34 Although we question whether § 31-40 could create a written agreement in the abstract, we need not resolve that issue in all respects. *Cf. Proska v. Arizona State Schools for the Deaf and the Blind*, 205 Ariz. 627, 629 ¶¶ 11-12, 74 P.3d 939, 941 (2003)

---

[2] In its third-party complaint, the City alleged that it "issued right-of-way permits to the Developers *and Contractors* for the projects on which Mr. Tarazon allegedly worked," and that the City codes "require the permittee (the Developers) *and the Contractors* to indemnify Phoenix against injury and death claims arising out of the performance of the permitted work." (Emphasis added.) But the City also alleged that, "[g]enerally, for the projects on which Mr. Tarazon allegedly worked, the right-of-way permits were issued to the Developers as 'permittees.'" Despite the confusion, in this Court the City asserts Code-based indemnity claims against only the Developers, not the Contractors with which the City had separate contracts.

(iterating the "general principle" that "statutes *do not* create contract rights" because legislative "[p]olicies, unlike contracts, are inherently subject to revision and repeal") (internal quotation marks and citations omitted); *Smith v. City of Phoenix*, 175 Ariz. 509, 514, 858 P.2d 654, 659 (App. 1992) (declaring the same principle with respect to a city ordinance and concluding "the fact that both parties knew [the judge's] salary was established by a city ordinance, which was naturally subject to change by the city council" suggested the absence of an employment contract). Rather, we conclude that the City Code, which applies solely based on an indemnitor's status as a permittee, does not constitute a written agreement for the services listed in § 12-552(A). The City's issuing a permit and the corresponding, independent indemnity obligation arising under Code § 31-40 do not create an agreement between the City and the Developers for either party to perform any of the services listed in subsection (A). Instead, the permit grants the Developers a license to enter Phoenix property to undertake their construction projects, *see* Phoenix City Code § 31-35; and § 31-40 provides a condition for the permit's issuance. The Code's indemnity provision in a very broad sense does "concern" a construction project. But the City did not offer or accept any of the services prescribed in subsection (A), such as developing or selling property or furnishing specifications for construction improvements.

¶35 Nor did an agreement for the services listed in subsection (A) arise merely because the Developers submitted their construction plans to the City as part of the permit application process. By reviewing those plans and issuing a permit, the City simply performed its legal duty to issue a right-of-way permit when the Developers satisfied all the relevant conditions. *Cf. Vance v. Lassen*, 82 Ariz. 188, 191, 310 P.2d 510, 512 (1957) (requiring the issuance of a permit when "there exists no legal excuse for non-issuance"); *City of Tempe v. Baseball Facilities, Inc.*, 23 Ariz. App. 557, 561, 534 P.2d 1056, 1060 (1975) (determining the denial of a requested business permit may not be arbitrary and capricious). Issuance of a permit in compliance with law does not itself evidence an "agreement" between the City and the Developers "for the services set forth in subsection A [of § 12-552]," and neither the construction plans nor MAGS alter that conclusion. Accordingly, the superior court erred in finding § 12-552 applicable to the City's indemnity claims against the Developers and dismissing those claims under Rule 12(b)(6).

### III.

¶36 We affirm the superior court's dismissal of the City's third-party, contract-based claims against the Contractors because neither § 12-510 nor the common law nullum tempus doctrine precludes application of § 12-552(A). We reverse the superior court's dismissal of the City's third-party claims against the Developers because the allegations in the City's complaint do not establish that those claims are "based in contract" for purposes of § 12-552(A) and (F). Accordingly, we vacate those portions of the court of appeals' opinion that concluded that the City's indemnity claims against the

Developers are "based in contract" and therefore subject to and barred by the statute of repose. We also vacate the superior court and court of appeals' attorney fee awards to the Developers, without prejudice to their seeking fees should they ultimately prevail. We remand the case to the superior court for further proceedings consistent with this opinion and express no view on the merits of the City's remaining indemnity claims or on the potential recovery of attorney fees by the ultimate prevailing party or parties. Finally, because the City concedes that its indemnity claims against the Contractors arise from contract, the Contractors are awarded their reasonable attorney fees incurred in this Court pursuant to A.R.S. § 12-341.01, upon compliance with ARCAP 21.