NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CITY OF TEMPE, *Plaintiff/Appellee*,

*v.*

GRAYSTAR INVESTMENTS, LLC, et al., *Defendants/Appellants*.

No. 1 CA-CV 22-0039
FILED 4-13-2023

Appeal from the Superior Court in Maricopa County
No. CV2019-005406
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

COUNSEL

Dickinson Wright PLLC, Phoenix
By D. Samuel Coffman, Bradley A. Burns, Amanda E. Newman
*Counsel for Plaintiff/Appellee*

Law Office of Dennis A. Sever PLLC, Mesa
By Dennis A. Sever
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Angela K. Paton and Judge D. Steven Williams joined.

---

**P E R K I N S**, Judge:

¶1        Graystar Investments, LLC, Graystar Holdings, LLC, Cochise Investments, LLC, KL-998 Trust, and Kenneth Losch (collectively, "Losch") appeal the entry of summary judgment for Tempe on multiple claims arising from its attempt to collect on a judgment. For the following reasons, we affirm.

¶2        While this appeal was pending, Kingston Holdings, LLC, Kingston Capital Co., LLC, DCD-998 Trust, David Dewar, and Susan Dewar (collectively, "Dewar") settled with the City of Tempe ("Tempe") and voluntarily dismissed their appeal. Thus, we do not address the issues Dewar raised on appeal, or any arguments about joint and several liability because they are moot.

## FACTS AND PROCEDURAL BACKGROUND

¶3        In 2007, Riverview Apartments, LLC ("Riverview") owned an apartment complex located on the south side of Washington Street in Tempe, Arizona. Mr. Losch and Mr. Dewar operated Riverview through various business entities.

¶4        As part of the Central Phoenix/East Valley Light Rail Project, Tempe sought to construct a light rail station adjacent to Riverview. But the East Valley Light Rail Project did not have funding to build the station. So, Tempe approached the surrounding property owners to contribute funds for the station's construction. In July 2007, Riverview agreed to contribute $1.3 million to expedite the construction, which could be paid in either ten installments or a lump sum.

¶5        Later in 2007, Losch sold Riverview and reaped over $16.7 million in net proceeds. Losch and Dewar ordered the proceeds to be equally distributed to their respective entities. Shortly after closing the sale of the property, the PFC Corporation, another creditor, sued Riverview to collect on an earlier debt. The PFC litigation revealed that after the

Riverview sale proceeds were disbursed, Riverview possessed "some minor amounts of cash," but no other assets.

**¶6**  In June 2009, Tempe forwarded Riverview a statement requesting payment of either the first installment or the lump sum by July 1, 2009. Riverview made no payment. Four months later, Tempe sent Losch a follow-up letter requesting payment no later than December 1, 2009.

**¶7**  On December 6, 2010, Riverview entered an "Installment Promissory Note," promising to pay Tempe five annual payments of $130,000 with the remainder due in the sixth year. These payments were set to begin on April 1, 2012, giving Riverview more than a year to make its first payment. Riverview failed to make the payments in 2012, 2013, 2014, 2015, and 2016.

**¶8**  On June 28, 2016, Tempe sued Riverview for the $1.3 million due under the note. The superior court awarded Tempe a default judgment for $1.3 million, with interest to accrue at 1% per month. Shortly after receiving the default judgment, Tempe sought to collect the debt. During the resulting debtor's examination, Mr. Losch testified that the proceeds were disbursed to the owners shortly after the Riverview sale.

**¶9**  In 2019, Tempe sued Losch and Dewar alleging liability for the $1.3 million judgment under the Uniform Fraudulent Transfer Act ("UFTA") and raising common law unjust enrichment and trust fund doctrine claims. The superior court granted Tempe summary judgment. Losch timely appealed, and we have jurisdiction. A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶10**  We review the superior court's grant of summary judgment *de novo*, affirming if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Ariz. R. Civ. P. 56(a); *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 71, ¶ 11 (App. 2011). We may affirm the grant of summary judgment on any grounds raised in the superior court. *See Zuck v. State*, 159 Ariz. 37, 42 (App. 1988).

### I. Doctrine of Laches and Statute of Repose

**¶11**  Losch argues that Tempe's claims are time-barred under the doctrine of laches. We disagree. The doctrine of laches does not apply against government entities "in matters affecting the public interest absent a statute expressly allowing such a defense." *State ex rel. Darwin v. Arnett*, 235 Ariz. 239, 245, ¶ 33 (App. 2014); *see also Mohave Cnty. v. Mohave-Kingman*

*Est., Inc.*, 120 Ariz. 417, 421 (1978) (**"**In general, equitable defenses . . . will not lie against the state, its agencies or subdivisions in matters affecting governmental or sovereign functions."). Because Losch points to no such statute, the laches defense is unavailable.

**¶12**        Losch's citation to *State v. Garcia* is unpersuasive. In *Garcia*, we applied laches against the state, noting that while "equitable defenses may not be asserted against the state when exercising its governmental or sovereign functions" laches was appropriate because the state brought a "derivative or third-party claim." 187 Ariz. 527, 529 (App. 1996). *Garcia* is inapplicable here because Tempe did not assert a "derivative or third-party claim," but sued to recover money due to the general fund. And collecting money due to the general fund is an exercise of "governmental or sovereign functions." *See City of Bisbee v. Cochise Cnty.*, 52 Ariz. 1, 18 (1938) (allowing the city to recover penalties and fees owed on past due taxes). Thus, the doctrine of laches does not apply to Tempe's claims.

**¶13**        Losch next argues that Tempe's claims are time-barred. Generally, time bars do not prevent government entities from pursuing their claims. *Id.* at 8; *City of Phoenix v. Glenayre Elec., Inc.*, 242 Ariz. 139, 143, ¶ 10 (2017). But the legislature can impose a time bar on the government's claims by "expressly and definitely" stating that the limitation applies to the government. *Glenayre Elec., Inc.*, 242 Ariz. at 143, ¶ 14.

**¶14**        Losch argues that despite being repealed in 2020, Section 29-706(D) bars Tempe's claims. Tempe does not dispute that the statute has effect despite being repealed, but Tempe argues that Section 29-706(D) applies only to wrongful distribution claims and Tempe made no claim for wrongful distribution. We agree. Under Section 29-706(D), "[a member] is liable to the limited liability company for a period of six years thereafter for the amount of the wrongful distribution." A.R.S. § 29-706(D) (repealed effective Sep. 1, 2020). Tempe did not bring a "wrongful distribution" claim, so Section 29-706(D)'s statute of repose does not provide an applicable time bar here.

**¶15**        We are not persuaded by Losch's argument that Section 29-706 preempted the common law trust fund doctrine claim, imposing the statute of repose on that claim. "We will not interpret a law to deny, preempt or abrogate common-law damages actions" when it does not contain such text. *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 273 (1994); *see also S. AZ Home Builders Assoc. v. Town of Marana*, --- Ariz. ---, ¶ 31, 522 P.3d 671, 676 (2023) ("Statutory interpretation requires us to determine the meaning of the words the legislature chose to use. We do so neither narrowly nor

liberally, but rather according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise."). The statutory text here contains no express preemption of the common-law trust fund doctrine.

**¶16**        Losch also contends the UFTA provides a time bar in its statute of repose, which reads, "A claim for relief . . . under this article is extinguished unless an action is brought . . . within four years after the transfer was made or the obligation was incurred." A.R.S. § 44-1009. Losch argues that the legislature sought to apply this limitation to the government because it defines "creditor" as a "person," and defines "person" to include "government or [a] governmental subdivision or agency." A.R.S. § 44-1001(7). But "such an attenuated connection" neither "expressly" nor "definitively" shows that the limitation statute applies to the state. *State Dept. of Env't Prot. v. Caldeira*, 794 A.2d 156, 164 (N.J. 2002) (interpreting UFTA). And "reliance on the definition of person is problematic because that word is not even present in the UFTA limitation clause." *Id.* Unlike the statute at issue in *Glenayre Elec.*, there is nothing in this statute of repose that expressly and definitely shows it applies to government entities. And we are unwilling to do by implication what the legislature did not do directly. *Cf. Hayes*, 178 Ariz. at 273. Thus, Tempe's claims are not barred under the doctrine of laches or either statute of repose.

## II.        Genuine Disputes of Material Fact

**¶17**        Losch argues that genuine disputes of material fact remain, precluding summary judgment. As an initial matter, we need not address whether there is a material dispute over when Tempe discovered the basis for its UFTA claim because we already concluded that Section 44-1009 does not apply here.

**¶18**        We view "the evidence in the light most favorable to the nonmoving party," *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 292, ¶ 19 (App. 2010), but Losch must have introduced sufficient evidence to counter the award of summary judgment. *Orme Sch. v. Reeves*, 166 Ariz. 301, 307 (1990). Losch argues three genuine disputes preclude summary judgment.

**¶19**        First, Losch argues that a material dispute exists about whether Tempe was a creditor and Riverview was insolvent. We disagree. Tempe became a creditor and Riverview became a debtor when they entered the memorandum of understanding, and Losch became a debtor two months later when Mr. Losch transferred all Riverview's sale proceeds to his separate business entities. *See* A.R.S. § 44-1004(A) ("A transfer made

5

or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred."); A.R.S. § 44-1001(2) (defining "Claim" to include "a right to payment, whether or not the right is reduced to judgment," "matured" or "unmatured."). And after payment on the memorandum of understanding became due, Mr. Losch negotiated with Tempe to enter the promissory note and forgo payment for more than a year, knowing that Riverview was insolvent because it had sold its sole asset and distributed all the proceeds to its members. Thus, there was no dispute of material fact about whether Tempe was a creditor or whether Riverview was insolvent.

¶20 Second, Losch argues that Tempe failed to introduce evidence showing that Mr. Losch, individually, the KL-998 Trust, or Cochise Investments, LLC received proceeds from the sale of Riverview. Losch misconstrues Tempe's burden. Tempe need not show that specific funds from Riverview's sale were transferred to other entities, only generally that the funds were transferred under the criteria outlined in the UFTA. *See* A.R.S. § 44-1004; *see also Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 209 (Tex. App. 2014); *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1353 (D.C. Cir. 2002) (reasoning that strict tracing would be impossible given the fungible nature of money, and requiring such tracing would amount to no less than "a mathematical impossibility"). Tempe introduced evidence showing the funds were transferred from Riverview to the other entities. Losch's evidence merely showing other sources of income to the entities is insufficient to create a dispute of material fact defeating summary judgment. *See Orme Sch.*, 166 Ariz. at 307; *see also United States v. Abbell*, 271 F.3d 1286, 1295 n.5 (11th Cir. 2001) (reasoning that only a small amount of tainted money needed to be commingled to taint even the legitimate money).

¶21 Third, Losch argues that Tempe failed to introduce sufficient evidence to meet the elements of liability under the alter-ego theory. To prove liability under the alter-ego theory, Tempe must show "that unity of control exists and that observance of the corporate form would sanction a fraud or promote injustice." *Keg Rest. Ariz., Inc. v. Jones*, 240 Ariz. 64, 73, ¶ 31 (App. 2016). "Unity of control exists when the parent corporation exercises 'substantially total control over the management and activities of the subsidiary.'" *Id.* at ¶ 32 (quoting *Taeger v. Catholic Fam. & Cmty. Servs.*, 196 Ariz. 285, 297, ¶ 45 (App. 1999)). Courts look to factors showing "substantial total control," including "common officers or directors, the parent's financing of the subsidiary, the parent's payment of the subsidiary's salaries and other expenses, the subsidiary's failure to maintain formalities of separate corporate existence, the similarity of the

parent's and the subsidiary's logos, and the opposing parties' lack of knowledge of the subsidiary's separate corporate existence." *Id.* at ¶ 32.

**¶22** There is no dispute that Losch and Dewar managed and operated all the other business entities at issue. There is no dispute that Losch and Dewar bypassed Riverview's parent company to distribute proceeds to Graystar and Kingston. There is no dispute that the entities owned the homes Losch lived in, the planes Losch flew in, or the cars Losch drove in. There is no dispute that Riverview's owners transferred monies between the entities to pay expenses as they became due, and that they retained sole control over the transfer of those monies. There is no dispute that observing the corporate form would sanction a fraud or promote an injustice by allowing Losch to retain funds that he twice assured Tempe would be paid in exchange for building the light rail station. Thus, there are no genuine disputes of material fact and summary judgment on the alter-ego theory was appropriate.

**¶23** In addition to Tempe's declaratory alter ego claim, the superior court granted summary judgment on its claims for fraudulent transfer, trust fund doctrine, and unjust enrichment. Aside from the factual disputes dealt with above, Losch does not argue that genuine disputes of material fact preclude summary judgment on these remaining claims. We affirm the superior court's remaining summary judgment conclusions.

## III. Attorneys' Fees and Costs

**¶24** We review whether the superior court can award attorneys' fees *de novo. ABCDW LLC v. Banning*, 241 Ariz. 427, 440, ¶ 60 (App. 2016). The superior court *must* award attorneys' fees under the contract if there is a contractual provision requiring a fee award. *McDowell Mountain Ranch Cmty. Ass'n v. Simons*, 216 Ariz. 266, 269, ¶ 14 (App. 2007).

**¶25** The promissory note Mr. Losch signed contained a provision agreeing "to pay the holder hereof upon demand any and all costs, expenses and fees (including reasonable attorneys['] fees) incurred in enforcing or attempting to recover payment of the amounts due under this Note." But Losch argues that this language is inapplicable because the promissory note was merged into the judgment. We disagree.

**¶26** When a "claim is reduced to judgment, the original claim is merged in the judgment, and the judgment becomes a new debt." *Nelson v. Nelson*, 91 Ariz. 215, 218 (1962). But "the doctrine of merger will not be carried to an extreme." *Id.* And where the agreement "provides special rights or exemption[s]" they "will be preserved and recognized." *Id.; see also*

*Accubid Excavation, Inc. v. Kennedy Contractors, Inc.*, 981 A.3d 727, 740 (Md. App. 2009) ("[T]he rights of a party to attorney's fees pursuant to a contract incurred in a claim originating from a breach of that contract may extend beyond judgment, despite merger of the contract.").

¶27 The promissory note's expansive language contemplated recovering attorneys' fees and costs at any stage of litigation, including those "incurred in enforcing or attempting to recover payment of the amounts due under this Note." The merger doctrine does not apply here because the parties created this "special right or exemption" permitting the recovery of attorneys' fees and costs, and we must continue to recognize and apply this provision of the promissory note. *See McDowell Mountain Ranch Cmty. Ass'n*, 216 Ariz. at 269, ¶ 14; *Nelson*, 91 Ariz. at 218.

¶28 Next, Losch argues that the superior court erred by compounding interest at the rate of 1% per month. The promissory note states, "upon 'default' all obligations under this Note (including principal, interests, costs and fees) shall bear interest, until paid in full, at the rate of 1% per month." This language explicitly includes all "interest, costs and fees" as part of the obligations that will bear interest at a monthly rate, *see Prieve v. Flying Diamond Airpark, LLC*, 252 Ariz. 195, 198, ¶ 9 (App. 2021) ("When the provisions of the contract are plain and unambiguous upon their face, they must be applied as written.") (quotation omitted), and the promissory note does not include any language that would limit the accrual of interest. *Cf. Simmons & Gottfried, PLLC v. Klarkowski*, 1 CA-CV 22-0354, 2023 WL 1978216 *2, ¶ 10 (Ariz. App. Feb. 14, 2023) (mem. decision). The superior court did not err in awarding all of Tempe's attorneys' fees and costs under the promissory note or compounding the accrued interest on a monthly basis.

¶29 Tempe requests its attorneys' fees and costs on appeal. As the prevailing party, we award Tempe its reasonable attorneys' fees and costs under the promissory note, upon compliance with ARCAP 21. *See McDowell Mountain Ranch Cmty. Ass'n*, 216 Ariz. at 269, ¶ 15.

## CONCLUSION

¶30       For the above reasons, we affirm the grant of summary judgment.

